*452
 
 Allen, J.
 

 This case arises out of the following facts: Upon the evening of October 5, 1924, which was a Sunday, John Alfonso and three other men were driving in an automobile from Corning, Ohio, to Buckingham, Ohio, and return. On their way from Buckingham to Coming, when in front of a church on what is known as Millertown Hill, their machine collided with a motorcycle. iS'ome disturbance being made in front of the church in connection with this accident, Pouts, the defendant below, proceeded to arrest the parties. Pouts was a resident of Millertown, Perry county, Ohio, and held a membership in the Athens County Protective Association, which had been incorporated under Sections 10200 to 10206, inclusive, General Code, and still functions under those statutes. After arresting the men of the automobile party, Pouts turned them over to the constable of Pleasant township, Perry county, Ohio, who took them before the mayor of Shawnee, Ohio. With the mayor, Pouts filed an affidavit charging the parties with intoxication and disturbing a religious meeting, and underneath his signature added the words, “Ohio Police.” John Alfonso later pleaded guilty to intoxication and disturbing the meeting and was fined. Pouts was then indicted for impersonating an officer, under Section 12860, General Code, and the questions presented here arise out of the trial based upon that indictment.
 

 The principal contentions of the plaintiff in error are as follows-:
 

 (1) That the court erred in admitting in evidence on behalf of the state the affidavit filed by Pouts against'John Theissen, wherein Fouts signed said affidavit “Ohio Police.”
 

 
 *453
 
 (2) That the court refused to admit in evidence the certificate of membership of plaintiff in error in the Athens County Protective Association, issued to him under authority of Sections 10200 to 10206, inclusive, General Code.
 

 (3) That the court erred in refusing to- admit in evidence the copy of the constitution and bylaws of the association.
 

 (4) That the court erred in his general charge: (a) In stating to the jury that the jurisdiction of said association was limited to Athens county and that if plaintiff in error was -a member of that association it could not avail him anything in this case; (b) that the court gave his own conclusions as to the guilt of Pouts from the evidence, and stated that he had no defense; (c) that the court peremptorily demanded and directed that the jury return a verdict in favor of the state of Ohio against plaintiff in error, A. H. Pouts.
 

 (5) That the court erred in refusing to give to the jury the special request offered by plaintiff in error at the dose of the evidence, and did not give that request, nor the substance of it, in the general charge.
 

 The indictment in the case was brought under the provisions of Section 12860, General Code, which reads:
 

 “Whoever, not a member of a regularly organized municipal police department, a legally elected public official or commissioned by the proper legal authority, falsely represents himself to be a police officer, sheriff, deputy sheriff or constable, * * * shall be fined not less than twenty-five dollars nor more than one hundred dollars or imprisoned in
 
 *454
 
 the workhouse not less than thirty days nor more than six months, or both. ’ ’
 

 Taking up in detail the questions raised we shall first consider whether the court erred in admitting. in evidence on behalf of the state the affidavit filed by Fouts against John Theissen, in which Fouts signed the affidavit “Ohio Police.” We are of the opinion that this method of signature had some relevance and competency upon the question whether Fouts was representing himself to, be a police officer. It is admitted that Fouts did actually sign the affidavit for this warrant, and it was a question for the jury whether his use of the words “Ohio Police” constituted a false representation that he (Fouts) was a police officer. Hence the court did not err in receiving the affidavit in evidence.
 

 We shall next consider the refusal of the court to admit in evidence the certificate of membership of the plaintiff in error in the Athens County Protective Association, and the copy of the constitution and by-laws of that association, and also the court’s statement to the jury that the jurisdiction of the association was limited to Athens county, and that if plaintiff in error was a member of the said association it could not avail him anything in this ease. We shall consider all of these questions together as they involve the related questions as to- who is entitled to hold membership in an association of this kind and what powers he may exercise under that membership.
 

 This association was incorporated under the following statutes, which must be considered in
 
 *455
 
 detail in order that we may understand the contention of the plaintiff in error:
 

 Section 10200, General Code: “Any number of persons, not less than fifteen, a majority of whom must be residents of this state, may become incorporated for the purpose of apprehending and convicting any person or persons accused of either a felony or misdemeanor.”
 

 Section 10201, General Code: “An association so incorporated may make and use a common seal, with the name of the corporation thereon. A majority of its members may adopt a Constitution and by-laws for their government, and elect or appoint such officers as they deem proper, who shall hold their offices during the term provided, by the Constitution and by-laws, and perform the duties thereby, and also by law required of them. The presiding officer of such an association may administer the proper oaths of office to any of its officers or members, and certify the appointment or election thereof under its seal.”
 

 Section 10202, General Code: “Such presiding officer may appoint deputies, not exceeding one in each township, in a county or counties where the corporation is located, who may administer an oath of office or membership, and certify the appointment or election thereof, which shall be valid when approved by the presiding officer under the seal of the corporation.”
 

 Section 10203, General Code: “The officers and members of the association upon the proper certificate of the presiding officer thereof, when so elected or appointed, if a felony has been committed, may pursue and without warrant arrest
 
 *456
 
 any person -whom they, believe or have reasonable canse to-, believe guilty of the offense, and arrest and detain, the alleged criminal in any county of the state to which he fled, and return him to any officer of the. county wherein the .offense was committed, and there detain'him until a legal warrant can be obtained for his arrest.”
 

 Section 10204, General C:ode: “An officer or member of such an association, under such certificate of authority may ■ apply for and obtain a warrant for the arrest of a. person accused of felony or misdemeanor, which shall be issued to bim by any. justice of the peace or police magistrate of a city or village under the same conditions as- warrants are issued to constables. Under such warrant he shall have the same power to arrest, and detain offenders as is vested in constables. ’ ’
 

 The questions raised by the plaintiff in error involve consideration of the following problems-:
 

 (1) 'Can a member of the Athens County Protective Association under the statute act to carry on the purposes of the association outside of Athens county?
 

 The court held that he could not, and so charged the jury.
 

 (2) What if any police powers has a member of the Athens County Protective Association?
 

 It was the view of the trial court that members of the Athens County Protective Association were authorized only to act inside of Athens county and that, therefore, membership in the association gave Pouts no pólice powers in Perry county. Hence he' charged the jury, in effect, that the
 
 *457
 
 jurisdiction of the Association was limited to Athens county and that plaintiff’s membership in the association was immaterial, and refused to receive in evidence the certificate of incorporation of the association and of Fouts’ membership therein. The state also contends that under the Code Fouts had no police powers whatever.
 

 Section 10200, General Code, provides that “any number of persons, not less than fifteen, a majority of whom must be residents of this state, may become incorporated * #
 

 That is to say, the statute specifically provides that the incorporators of the association may be residents of the state, and thereby definitely extends the right of membership to persons not citizens of Athens county only, but to persons citizens of Perry and other counties.
 

 Section 10202, General Code, provides that the presiding officer of the association may appoint deputies * * * in a county or counties where the corporation is located. The Legislature, therefore, contemplated the action of such' an association outside of the county in which it has its principal location.
 

 Section 10203, General Code, also provides that, if a felony has been committed, members of the association may “arrest and detain the alleged criminal
 
 m any county
 
 of the state to which he fled.”
 

 Section 10204, General Code, provides that an officer or member of the association may apply for and obtain a warrant which shall be issued to him by any justice of the peace or police magistrate of a city or village, under the same conditions as warrants are issued to constables. This
 
 *458
 
 section, so far from limiting action outside of the specific county of incorporation, recognizes applications for warrants made outside of the county, when it states that “any justice of the peace or police magistrate of a city or village” shall issue the warrant.
 

 This view that members of associations incorporated under Section 10200
 
 et seq.
 
 may act, subject to the limitations of the statute, outside of the county of incorporation, is strengthened by the history of the statutes. Section 10200
 
 et seq.
 
 constitute an amendment to the old statute upon the apprehension and conviction of horse thieves and other felons, passed March 21, 1887, to be found in 84 Ohio Laws, at page 169. This act was amended in 1902 by the passage of the present statute, which may be found in 95 Ohio Laws, at page 298. The present enactment then, is an outgrowth of the statute dealing with the apprehension and conviction of horse thieves. Now the very nature of the crime intended to be prevented by a statute for the apprehension of horse thieves would require that in most cases pursuit and arrest be not limited to one county, but extended to the several counties of the state. In view of this statutory history, and since the statute nowhere prescribes that action by a member of such an association is limited to the county of the association’s incorporation, and in so many respects recognizes actions outside of one county, and membership of persons who are residents not merely of one county but of the entire state, we hold that Fonts was authorized in this instance to exercise what powers he had in Perry county, as well as in Athens county. The court, therefore, was in error in its charge upon this point.
 

 
 *459
 
 We come then to consider what was the nature of the powers granted to Fonts under Section 10200
 
 ét seq.
 
 It is the contention of the state in this ease that he was granted no powers not given to' an ordinary citizen. However, looking to the statute, we are compelled to disagree with the state upon this point.
 

 The state grounds its contention upon Sections 10203 and 10204, General Code, given above. It is true that, under this enactment, members of an association formed under Section 10200
 
 et seq.
 
 are authorized to arrest without warrant only in cases of felony, not in cases of misdemeanors. It is also true that a somewhat similar statute (Section 13493, General Code) exists in this state with regard to arrest in felony cases by a person not an officer; that is, by an ordinary citizen. This section provides that “when a felony has been committed, any person without warrant, may arrest another whom he has reasonable cause to believe is. guilty of the offense, and detain him until a warrant can be obtained.”
 

 It will be observed that this provision is not identical with that, of Section' 10203. Under Section 10203, members of this association are authorized, if a felony has been committed, to arrest without warrant any person whom they believe guilty of the offense, as well as those whom they have reasonable cause to believe guilty of the offense. In this particular, therefore, Section 10203 grants to members of the association powers not conferred upon the ordinary citizen.
 

 Moreover, 'Section 10204 authorizes issuance of a warrant to an officer or member of the associa
 
 *460
 
 tion and gives Mm the powers of a constable in the arrest or detention of offenders after the warrant has issued.
 

 These sections (Sections ■ 10203 and 10204) do not confer upon members of the association- the powers of regularly appointed police officers, but they do confer upon them certain police powers not invested in the ordinary citizen. Since the defendant, therefore, was entitled under his certificate of membersMp to act outside of Athens county, and since, under the statute, he was invested with certain- powers of a police officer not given to ordinary citizens, it was error upon the part of the' trial court to ■ exclude the constitution and by-laws and articles of incorporation of the Athens County Protective Association, to exclude evidence with regard to Pouts ’ membersMp in that organization, and to charge the jury that Pouts’ membership in the association was not material.
 

 We come now to the question whether the court erred in directing a verdict on behalf of the state.
 

 The plaintiff was indicted for falsely representing himself to be a police officer, sheriff, deputy sheriff, or constable. It is conceded upon the record that he was not a member of a regularly organized police department, a legally elected public official, or commissioned by any proper legal authority. The court held that when the defendant signed his name to the affidavit for a warrant, and underneath it put “OMo Police,” he falsely represented himself to be a police officer; that there was no defense upon that point; and that it was proper to direct a verdict for the state.
 

 In Ms charge to the jury the court said:
 

 “That he impersonated an officer; no dispute
 
 *461
 
 about it! He made the arrest and be signed the affidavit over at Shawnee and noted himself Ohio Police. ’ ’
 

 The court also said in his charge to the jury:
 

 “It is charged that the defendant unlawfully and falsely did represent himself to be a police officer, and that he was not a police officer. Under the ruling of the court, the court says to you there is no defense here. This man was not an officer. It makes no difference, under the law, what he may believe himself to be, because he las no business and no right here whatever, under any defense that he offers, to interfere with these people at all.”
 

 It is the general rule that in criminal eases, where the defendant pleads not guilty, the court has no power to direct a verdict of guilty, even where the incriminating offense is conclusive and unoontradicted. 12 Cyc., 595;
 
 Rhodes
 
 v.
 
 Commonwealth,
 
 48 Pa., 396 ;
 
 Lane
 
 v.
 
 Commonwealth,
 
 59 Pa., 371;
 
 Shaffner
 
 v.
 
 Commonwealth,
 
 72 Pa., 60, 13 Am. Rep., 649;
 
 Sims
 
 v.
 
 State,
 
 42 Ala., 33;
 
 Nonemaker
 
 v.
 
 State,
 
 34 Ala., 211;
 
 Tucker
 
 v.
 
 State,
 
 57 Ga., 503;
 
 State
 
 v.
 
 Picker,
 
 64 Mo. App., 126;
 
 State
 
 v.
 
 Winchester,
 
 113 N. C., 641, 18 S. E., 657;
 
 State
 
 v.
 
 Riley,
 
 113 N. C., 648, 18 S. E., 168.
 

 The state claims, however, that, when he admitted signing his name “A. H. Pouts, Ohio Police,” the defendant admitted the corpus of the crime-, and that it was therefore proper for the court to direct a verdict. The defendant claims that, while he represented himself to be a police officer, he did not, as charged in the indictment, falsely and unlawfully represent himself to be a
 
 *462
 
 police officer, nor at any time admit that he made such a false and unlawful representation.
 

 The defendant was indicted, not for representing himself to be a police officer, but for falsely representing himself to be a police officer. Now the word “false” has two distinct and well-recognized meanings: (1) Intentionally or knowingly or negligently untrue; (2) untrue by mistake, accident or honestly after the exercise of reasonable care.
 
 United States
 
 v.
 
 Ninety-Nine Diamonds,
 
 139 F., 961, 966, 72 C. C. A., 9, 2 L. R. A. (N. S.), 185.
 

 “In the more important uses, in jurisprudence, of ‘false’ and ‘falsely,’ they usually import somewhat more than the vernacular sense of ‘erroneous’ or ‘untrue.’ They are oftenest used to characterize a wrongful or criminal act, such as involves an error or untruth, intentionally or knowingly put forward. A thing is called ‘false’ when it is done, or made, with knowledge, actual or constructive, that it is untrue or illegal, or is said to be done falsely when the meaning is that the party is in fault for its, error.”
 
 Ratterman, Treasurer,
 
 v.
 
 Ingalls,
 
 48 Ohio St., 468, 483, 28 N. E., 168, 169;
 
 Hatcher
 
 v.
 
 Dunn,
 
 102 Iowa, 411, 71 N. W., 343, 36 L. R. A., 689;
 
 Putnam
 
 v.
 
 Osgood,
 
 51 N. H., 192, 206;
 
 State
 
 v.
 
 Smith,
 
 63 Vt., 201, 22 A., 604;
 
 Clapp
 
 v.
 
 Mass. Benefit Ass’n.,
 
 146 Mass., 519, 16 N. E., 433;
 
 Franklin Ins. Co.
 
 v.
 
 Culver,
 
 6 Ind., 137;
 
 Cohn
 
 v.
 
 Neeves,
 
 40 Wis., 393.
 

 “Falsely,” as used in an instruction stating that it is. for the jury to determine whether defendant falsely represented certain facts, will be construed to mean something more than “mistakenly” or “untruly,” and cannot be construed otherwise than
 
 *463
 
 to mean something designedly untrue or deceitful, and as involving an intention to perpetrate some fraud.
 
 State
 
 v.
 
 Brady,
 
 100 Iowa, 191, 204, 69 N. W., 290, 36 L. R. A., 693, 62 Am. St. Rep., 560.
 

 If the word “falsely” meant nothing in Section 12860, why should it have been used at all? The theory of the trial court seems to be that a mere misrepresentation, even though made in absolute good faith, renders one liable to indictment under this statute. Under that theory of the case the section might well read: Whoever, not a member of a regularly organized police department, a legally elected public official, or commissioned by the proper legal authority, represents himself to be a police officer, sheriff, deputy sheriff, or constable, is liable to fine and imprisonment. The Legislature, however, evidently considered that the word “falsely” has some meaning in this section; that there must have been actual or constructive knowledge of the untruth of the representation, and there must have been the element of actual or constructive deceit present in order to constitute the falsity of the statement. By its use of the word “falsely” the Legislature injected the element of good faith into the crime defined in Section 12860.
 

 Such being the case, under the circumstances set forth in this record, where the defendant was invested with certain police powers, which he had a right to exercise throughout the state, it was a question of fact for the jury whether he represented himself falsely, that is, fraudulently, to be a police officer. The case was analogous to a ease which might arise if a constable in Michigan in
 
 *464
 
 advertently crossed the line into Ohio and represented himself to be a constable. Under such circumstances, when there was a certain amount of truth in his statements, would he as a matter of law be guilty of falsely representing himself to be a constable?
 

 It was in keeping with this theory of the case that defendant’s counsel at the trial below requested the court to give the following special charge to the jury before argument:
 

 “If you should find from the evidence in this case that the Athens Protective Association was duly incorporated and organized under the laws of Ohio, and that said A. H. Pouts- was a member of Said association, and that he had a proper certificate of the presiding officer of said association, and that on the 5th day of October, 1924, represented himself to be a ‘police officer’ in good faith and honestly believed that he was a regular constituted police officer under and by virtue of said appointment, although he may have been mistaken in such belief, then in such case you should find the defendant ‘not guilty.’ ”
 

 This charge was refused by the court and was not given either verbatim or in substance in the general charge. The refusal to give this special charge or its substance was error.
 

 A distinct authority to the -same effect is found in the case of
 
 Ratterman, Treasurer,
 
 v.
 
 Ingalls,
 
 48 Ohio St., 468, 28 N. E., 168, the first and second paragraphs of the syllabus of which read:
 

 “(1) In order to render a return made by a taxpayer to the assessor of property for taxation ‘a false return,’ within the meaning of original
 
 *465
 
 and amended (Section 2781, Rev. Si;., there must appear, if not a design to mislead or deceive on the part of the taxpayer, at least culpable negligence.
 

 “ (2) Where it is found that tax returns during the years 1881 to 1885, inclusive, from which certain shares of stock owned by the taxpayer were omitted, were made by him under an honest belief that the shares were not taxable, which belief was induced by reliance upon the opinions to that effect given by capable lawyers, and like opinions by the taxing officers of the county and state of his residence, and by the action of such officers in refusing to correct returns of persons whom they knew were holders of such stock, and it further appears that the taxpayer had given to the county auditor, in the year 1881, information as to his ownership of such stock, and had not, during any of said period, done any act indicating a purpose to conceal such ownership, the returns so made will not be treated as false returns, within the meaning of section 2781, Revised Statutes, although it is after-wards adjudged by the courts that such shares were, under the laws of the state, taxable during each of the years named.”
 

 It follows inevitably from the above conclusions that the trial court committed reversible error in the exclusion of evidence, in his charge to the jury, and in directing a verdict for the state.
 

 Judgment reversed.
 

 Marshall, C. J., Jones, Matthias, Day and Kinkade, JJ., concur.
 

 Robinson, J., not participating.