**Ronald KRZEMINSKI,
Petitioner-Appellant,**

v.

**E. P. PERINI, Superintendent, Marion
Correction Facility,
Respondent-Appellee.**

No. 79–3178.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1979.

Decided Jan. 30, 1980.

Rehearing Denied April 29, 1980.

Paul Mancino, Jr., Cleveland, Ohio, court-appointed CJA, Ronald Krzeminski, Marion, Ohio, for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Randall G. Burnworth, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

In 1972 an Ohio jury convicted Petitioner-Appellant Ronald Krzeminski of first degree murder. After properly exhausting all avenues of relief in the Ohio state courts, he filed the instant petition for a writ of habeas corpus in federal district court. The district court denied relief and petitioner appeals. We affirm District Judge Don Young.

### FACTS

The underlying facts of this case present a sordid tale of marital strife resulting in murder. Petitioner's own testimony at trial outlined what occurred. The petitioner married in 1969 after a stormy engagement period of over two years. The marriage was filled with conflict, and in December of 1970 the couple separated. Thereafter, a series of conversations and meetings took place between Petitioner and his wife Patricia in an attempt to salvage the marriage. On March 25, 1971, the petitioner called his sister and brother-in-law and asked them to accompany him on a visit to his wife's apartment. He asked them to go along because he feared that his wife might falsely accuse him of breaking and entering or other similar offense. His wife was not at home when the trio first drove by, but a bit later she had returned. Petitioner's sister and brother-in-law accompanied him to the apartment house entrance, but he went on alone to his wife's apartment. Petitioner testified that his wife sexually teased him and then taunted him. He admitted choking his wife until she stopped breathing and then stabbing her several times with a knife obtained from the kitchen.

The petitioner returned to the car where his sister and brother-in-law were waiting for him. He told them that he had killed his wife although when he saw their horrified reactions, he said it was a joke. They dropped him off at his apartment. There, he told a neighbor that he had killed his wife. He penned a suicide note admitting the killing and took a bottle of sleeping tablets. He left the apartment to find a place to die, but ended up at a friend's

apartment where he again admitted the killing. He was taken to a local hospital where he recovered to stand trial for murder.

The petitioner's defense at trial was that he was not guilty by reason of insanity. Alternately, his attorneys argued that because of his deep anger, he should be convicted at most of manslaughter, a lesser included offense of murder. Defense counsel urged that at the very least, petitioner's anger operated to negate malice or intent to kill, which were elements of the crime of murder under Ohio law in 1972.[1] The jury, however, returned a verdict of guilty of first degree murder with a recommendation of mercy. The petitioner was sentenced to life imprisonment.

## I.

In his habeas corpus petition, petitioner raises four separate claims regarding the state trial judge's jury instructions.[2] Two of these claims can be summarily rejected, the other two require more extended treatment.

The state trial judge instructed the jury on the elements of first degree murder, second degree murder and voluntary manslaughter. He then instructed the jury on the elements of the insanity defense and the effect of sudden anger on the murder charges. The judge instructed the jury that the petitioner had the burden of proving by a preponderance of the evidence that he was not guilty by reason of insanity. Similarly, the judge instructed the jury that

anger negating intent or premeditation was an affirmative defense which the defendant also had to show by a preponderance of the evidence.

The petitioner claims that the imposition of these burdens of proof on him violated due process. He relies on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) which command that "as a matter of federal due process the prosecution must prove beyond reasonable doubt every fact necessary to constitute the crime charged." *Berrier v. Egeler*, 583 F.2d 515, 521 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978).

█ Petitioner's claim is foreclosed by *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *Patterson* makes it clear that so long as a jury is instructed that the state has the burden of proving every element of the crime beyond a reasonable doubt, there is no due process violation. The state may properly place the burden of proving affirmative defenses such as self-defense, extreme emotional disturbance or insanity upon the defendant. *Patterson, supra; Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), *dismissing for want of a substantial federal question* 351 A.2d 561 (Del.1976); *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). What the state may not do is presume that an element of a crime exists as a result of given conduct and then place

---

1. *See* 29 Ohio Rev.Code §§ 2901.01 *et seq.* (1953), *superceded*, 29 Ohio Rev.Code §§ 2903.-01 *et seq.* (1975).

2. The state respondents argue that because no objection to the jury instruction was made at trial, the petitioner is barred from raising any questions about them in this habeas corpus proceeding. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We have previously considered and rejected similar claims. Where there is plain error in the record which is reviewable under state law, we can review it in a habeas corpus proceeding. *Berrier v. Egeler*, 583 F.2d 515, 522 (6th Cir.) *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978). *Accord Cook v. Borden-*

*kircher*, 602 F.2d 117, 119 (6th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979); *Rachel v. Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978). The Ohio state courts review plain error in jury instructions. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Lockett*, 49 Ohio St.2d 48, 358 N.E.2d 1062 (1976) *overruled in part on other grounds in State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140, *vacated*, 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978); *State v. Gideons*, 52 Ohio App.2d 70, 368 N.E.2d 67 (1977). Accordingly we can do the same. *See also Jurek v. Estelle*, 593 F.2d 672, 680–85 (5th Cir. 1979), *reh. en banc granted*, 597 F.2d 590 (1979).

the burden of showing otherwise on the defendant. *Mullaney v. Wilbur, supra.* See *Sandstrom v. Montana,* — U.S. —, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (instruction to the jury that a person presumes "the ordinary consequence of his voluntary acts" held unconstitutional because the jury could have interpreted it as either shifting the burden of persuasion to the defendant or conclusively presuming that the defendant acted with intent, an element of the crime charged).

■ Under Ohio law at the time of petitioner's trial, insanity and anger were affirmative defenses which had to be both raised and proved by a defendant. *See e. g. State v. Vargo,* 116 Ohio St. 495, 156 N.E. 600 (1927); *State v. Austin,* 71 Ohio St. 317, 73 N.E. 218 (1905); *State v. Salmon,* 10 Ohio App.2d 175, 226 N.E.2d 784 (1967). The state judge properly instructed the jury under this established law.[3] His instructions distinguished the elements of the crime on which the state had the burden of proof from the elements of the affirmative defenses, on which the petitioner had the burden of proof. The due process clause requires no more. *Patterson, supra.*

## II.

Two other instructions given to the jury are more troublesome. The state trial judge told the jury:

> The defendant, having admitted in open court that he killed the deceased, a verdict of not guilty cannot be returned in this case, and it is your duty to determine whether the defendant is guilty of murder in the first degree, murder in the second degree, or manslaughter in that order, or whether the defendant is not guilty by reason of insanity.

In addition, while instructing the jury on the lesser included offense of manslaughter, the trial court stated:

> To constitute manslaughter in the first degree, the killing of another must be done unlawfully, that is, that the killing of Patricia Krzeminski by this defendant was done unlawfully.
>
> If one person kills another and no circumstances of excuse or justification are shown, the law presumes that the killing was unlawful.

■ The first of the above-quoted instructions presents a patent constitutional violation. No matter how overwhelming the evidence, a judge cannot direct a verdict of guilty or instruct a jury that it must find the defendant guilty. *See e. g. Sparf v. United States,* 156 U.S. 51, 105, 15 S.Ct. 273, 39 L.Ed. 343 (1895); *Schwachter v. United States,* 237 F.2d 640, 644 (6th Cir. 1956) and cases cited. Any doubt that this rule is constitutionally based was removed by *In re Winship, supra,* 397 U.S. at 364, 90 S.Ct. 1068 which mandates that the prosecution prove every element of a crime beyond a reasonable doubt to the satisfaction of the finder of fact. In a case tried to a jury, that body must make the decision as to guilt or innocence. A judge cannot order a jury to find the defendant guilty of *something.* The trial judge's instruction in this case did precisely that.

■ The second of the above-quoted instructions also presents a constitutional violation. *Sandstrom v. Montana, supra* makes it clear that a judge cannot instruct a jury that it must presume an element of a crime has been established on a showing that certain conduct took place.[4] Such an

---

3. It is true that after petitioner's trial in 1972, the law in Ohio changed. Effective January 1, 1974, a defendant in Ohio need only go forward with sufficient evidence to raise a defense. A defendant no longer has the burden of proving the defense by a preponderance of the evidence. *See State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976) (construing Ohio Rev.Code § 2901.05(A)); *State v. Humphries,* 51 Ohio St.2d 95, 364 N.E. 1354 (1977) (giving Robinson retroactive effect to all trials begun

after Jan. 1, 1974). Most recently, the Ohio legislature has changed the law once again. A defendant in Ohio currently has the burden of proving an affirmative defense by a preponderance of the evidence. 29 O.R.C. § 2901.05 (effective Nov. 1, 1978).

4. In contrast, the trial judge properly instructed the jury that it could *infer* intent or malice from the facts:

> If a wound is inflicted upon a person with a deadly weapon in a manner calculated to

instruction effectively shifts the burden to the defendant of disproving an element of the crime. This is constitutionally forbidden.

Both the Ohio courts and the district court below found that the first instruction, *supra* was erroneous.[5] Both concluded, however, that the error was harmless. We agree.

There are two similar approaches to analyzing harmless error when dealing with constitutional violations in a trial setting. The first is the straightforward test of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); whether the error was "harmless beyond a reasonable doubt." The second approach is whether "in light of the totality of the circumstances . . . the defendant received a constitutionally fair trial." *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979) rev'g 570 S.W.2d 627 (Ky.1978).[6] *See Cook v. Bordenkircher*, 602 F.2d 117, 120–21 (6th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 286, 62 L.Ed.2d 196, (1979). In theory, the *Chapman-Harrington* test is triggered only upon a demonstration of constitutional error while the "totality of the circumstances" approach is used to determine whether admitted error was egregious enough to reach constitutional proportions in the first place. Compare the majority and dissenting opinions in *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Compare also the harmless error analysis used in *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979) with that used in *Cook v. Bordenkircher, supra*. Because we feel that the two errors which took place here were of constitutional dimension, we shall examine them under *Chapman-Harrington*.

■ Our examination of the record convinces us that the first error was harmless beyond a reasonable doubt. The defense at trial never argued that the defendant should be found not guilty. It argued that the defendant should be found not guilty by reason of insanity, or alternatively, guilty of a lesser included offense of first degree murder. The defendant admitted the murder to numerous other people and recounted the details of the murder from the witness stand to the jury. Five people testified that the petitioner admitted the murder to them. A friend of the petitioner testified that on two different occasions, the petitioner stated that he was going to kill his wife. The only effect of the judge's instruction that the jury could not acquit the defendant was to minimize the possibility of jury nullification. Only an irrational jury could have acquitted the defendant outright.

■ Similarly, we think that the second error was also harmless beyond a reasonable doubt. The trial judge's instructions to the jury that the law presumed that a killing was "unlawful" from the fact that a killing had occurred related only to the lesser-included offense of manslaughter. The defendant at trial never denied that the killing of his wife was unlawful. He argued only that he was not guilty by reason of insanity. Indeed, his alternative argument was that he was guilty only of manslaughter because he had acted in anger. Thus, he conceded that to the extent that he was culpable, he was guilty of an "unlawful" killing.

### III.

We are aware that there is language in *Brotherhood of Carpenters v. United*

---

destroy life, the intent or purpose to kill may be inferred from the use of the weapon. Where one intentionally cuts or stabs another with a deadly weapon in a manner likely to cause death, you may infer that the act was done maliciously.

This distinction between a permissible inference and a mandatory or burden-shifting presumption is critical. *See United States v. Davis*, 608 F.2d 698 (6th Cir., 1979).

5. In addition to violating federal law, the instruction was contrary to established state law. *See Fouts v. State*, 113 Ohio St. 450, 149 N.E. 551 (1925).

6. Students of federal-state relations will be interested in reading the various opinions drafted by several Kentucky Supreme Court justices in this case.

*States,* 330 U.S. 395, 408–09, 67 S.Ct. 775, 91 L.Ed. 973 (1947) and *Bollenbach v. United States,* 326 U.S. 607, 614–615, 66 S.Ct. 402, 90 L.Ed. 350 (1946) which suggests that patent errors in jury instructions should rarely be deemed harmless. In each of those cases, however, the errors complained of could have affected the jury's deliberations.[7] We are convinced that the errors complained of here could not have.

The judgment of the district court is affirmed.

**7.** In *Sandstrom v. Montana,* 442 U.S. 510, 527, 99 S.Ct. 2450, 2461, 61 L.Ed.2d 39 (1979), the Supreme Court remanded the case to the Montana Supreme Court with the notation that the lower court was free to consider the question of harmless error. We also note that the dissent in *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 2090–91, 60 L.Ed.2d 640 (1979) (Stewart, J., dissenting) would recognize the possibility of harmless error where an instruction was constitutionally infirm.