Samuel **FULTON**, Petitioner,

v.

**WARDEN, MARYLAND PENITENTIARY,** Respondent.

Civ. A. No. J–78–1517.

United States District Court, D. Maryland.

June 29, 1981.

Samuel Fulton, in pro per.

Stephen H. Sachs, Atty. Gen., Alice G. Penderhughes, Asst. Atty. Gen., Baltimore, Md., for respondent.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Petitioner Samuel Clifton Fulton was convicted of first degree murder on December 7, 1973 by a jury in the Baltimore City Criminal Court and was sentenced to imprisonment for the balance of his natural life. He filed this action under 28 U.S.C. § 2254, challenging an alibi instruction given at his trial, as unconstitutionally shifting the burden of proof to him.

No exception was taken to the instruction at trial, and no issue regarding it was raised on direct appeal. Petitioner appealed on other grounds, and his conviction was affirmed by the Court of Special Appeals. *Fulton v. State*, No. 275, Sept. Term 1975 (Jan. 17, 1975). The Maryland Court of Appeals denied his petition for a writ of certiorari.

Petitioner filed a state action for postconviction relief in 1977, based on the alibi instruction. The state court ruled that giving of the instruction was error but held it harmless. The Court of Special Appeals denied leave to appeal the postconviction result on the same ground. *Fulton v. State*, No. 133, Sept. Term 1977 (Oct. 7, 1977).

■  Plaintiff asserts a cognizable claim under 28 U.S.C. § 2254. His raising of the claim at the postconviction proceeding, with denial of leave to appeal by the Court of Special Appeals, constitutes exhaustion of his state remedies.

■  The State asserts that the failure to object to the instruction at trial bars petitioner's raising of this claim under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), as interpreted by the Fourth Circuit in *Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir. 1978).[1] The Supreme Court held in *Wain-*

---

1. The State refers to the holding in the companion case of *Dooley v. Sheffer*, 572 F.2d at 997– 98.

*wright v. Sykes* that where a state appellate court has refused to consider a claim because of a defendant's failure to comply with a state procedural rule, the claim is not to be considered by a federal court in a habeas action absent a showing of cause and prejudice. Nothing in the holding or rationale of that case precludes consideration by the federal court where the state court has actually considered the merits of the claim, despite the failure to comply with a state procedural rule. *County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1978); *Williams v. Zahradnick*, 632 F.2d 353, 359–60 & 359 n. 6 (4th Cir. 1980); *Baker v. Muncy*, 619 F.2d 327, 329 (4th Cir. 1980).[2] Petitioner's claim was not denied by the state courts in the postconviction proceedings because of failure to object at trial; both courts addressed the merits.[3] Because consideration by this Court is not barred under *Wainwright v. Sykes*, this Court must address the merits of the claim.

Petitioner was convicted of killing his wife. The medical examiner's testimony at trial placed the time of her death between 5 a. m. and 11 a. m. on February 28, 1973 (T. 312). The time was further narrowed by Anrair Clay, sister of the victim, who was staying overnight with her sister. She testified that she saw and spoke with Mrs. Fulton from around 7:45 or 7:50 a. m. to 8:05 or 8:10 a. m. on the morning in question (T. 109, 110).

Edward Cates, owner of a neighborhood store three blocks from Mrs. Fulton's home, testified that he saw Mr. Fulton for about five minutes at about 8:30 or 8:45 a. m. on February 28, 1973 (T. 393–94). He stated that Mr. Fulton came in for change for the streetcar and told Cates he was late for work. (T. 395, 397–98). He looked normal; Mr. Cates did not notice anything unusual about him (T. 398).

At the close of trial, the judge gave the following instruction with respect to alibis:

> The defendant has the burden of proving an alibi defense and must do so by a preponderance of the evidence, not beyond a reasonable doubt. In order to prove an alibi the testimony must cover the whole time in which the crime by any possibility might have been committed and it should be subjected to rigid scrutiny.

(T. 514). Petitioner contends that this instruction unconstitutionally shifted the burden of proof as to his alibi to him. He relies on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and on *State v. Grady*, 276 Md. 178, 345 A.2d 436 (1975), in which the Maryland Court of Appeals held a similar alibi instruction unconstitutional under *Mullaney*.

Respondent contends that *Grady* cannot be applied retroactively, relying on *Davis v. State*, 40 Md.App. 467, 391 A.2d 872 (1978).[4] Petitioner's trial occurred before *Mullaney* and *Grady* were decided, and if neither is retroactive, no relief can be afforded here. In *Davis v. State*, the Maryland Court of Appeals, 285 Md. 19, 400 A.2d 406 (1979), deciding whether a state postconviction challenge to an alibi instruction was barred, held that *Grady* did not create new law, the Maryland courts having previously recognized the principle that the State must prove all elements of a crime beyond a reasonable doubt. In *Davis*, the Court of Appeals had before it the question whether *Grady* created new law within the meaning of Md. Ann. Code art. 27, § 645A(d). Subsection 645A(d), part of the Maryland Post-

---

2. It cannot be determined from reading the opinion in *Frazier* whether the state courts denied Dooley's claims on the basis of failure to comply with procedural requirements or on the merits. In any event, the later Supreme Court and Fourth Circuit cases are controlling. Although in both *Allen* and *Williams* the claims were considered on the merits on appeal, rather than in postconviction proceedings, their rationale would apply here.

3. In *Graham v. Maryland*, 454 F.Supp. 643 (D.Md.1978), and *Robertson v. Warden*, 466 F.Supp. 262 (D.Md.1979), two reported cases involving similar alibi instructions, the state courts had refused to consider the merits because of failure to make a timely objection.

4. At the time the State's answer was submitted, only the Maryland Court of Special Appeals had decided the *Davis* case. Thus, it relied on that decision.

conviction Procedure Act, provides that no error is to be deemed waived where, subsequent to the proceeding in which it could have been raised, a court whose decisions are binding on Maryland's lower courts "imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence." Md. Ann.Code, art. 27, § 645A(d). The question before the Court of Appeals was whether its decision in *Grady* was a "procedural or substantive standard not theretofore recognized" under the statute, not whether *Mullaney* was to be applied retroactively.[5] Not to beg the question, however, the *Davis* decision that *Grady* did not create new law effectively denies in state postconviction proceedings relief to persons tried before *Mullaney* and *Grady*, albeit on the state procedural ground of waiver. *Grady* was a case in which *Mullaney* was applied to a Maryland alibi instruction. The Supreme Court has, however, held *Mullaney* is to be applied retroactively, in a case involving burden of proof on self-defense. *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

■ There is no question that the alibi instruction given in petitioner's case was erroneous, as a matter of federal law, under *Mullaney*. Not only did it specifically state that the defendant must prove an alibi by a preponderance of the evidence, but the additional comment that every possible moment must be accounted for and that the alibi should be subjected to strict scrutiny may well have given the jury an impression that a burden heavier than a preponderance of the evidence was placed on the defendant. *Cf. Robertson v. Warden*, 466 F.Supp. 262, 263 (D.Md.1979) (instruction erroneous but petitioner failed to show "actual preju-

dice" under *Wainwright* ). The State concedes that the instruction was erroneous but urges that in this case giving it was harmless error. Both state courts found harmless error.

This case presents a difficult question because the alibi evidence presented covered only five minutes out of a possible three hours in which the crime could have been committed. The store at which the petitioner appeared around 8:30 or 8:45 a. m. was located only three blocks from the victim's home, so that, assuming the truth of the witness' testimony, it would still have been possible for the crime to have been committed before petitioner was in the store or afterward.[6]

The uncontroverted evidence at trial established that petitioner arrived at his wife's home sometime before 8:30 p. m. on the evening of February 27, 1973. Two witnesses, Anrair Clay and Joyce Fulton, testified that petitioner and his wife had an argument (T. 102, 156–68), with petitioner at one point threatening his wife by seeming to swing an ax toward her (T. 170–71). Later, however, petitioner and his wife went upstairs to bed and when Mrs. Clay called up to Mrs. Fulton around 11 p. m. and 5 a. m., Mrs. Fulton said things were all right (T. 106). Mrs. Clay saw Mrs. Fulton the next morning from 7:45 or 7:50 a. m. to 8:05 or 8:10 a. m. (T. 109–11). She saw a shape in her sister's bed at this time that she assumed was Mr. Fulton (T. 136, 142, 144–46). Mrs. Clay went back to sleep and discovered her murdered sister in bed in the next bedroom around 11:55 a. m. (T. 111–112).

The defense theory at trial was to show, or at least to create a doubt by suggesting that Mrs. Fulton was killed by her current boyfriend, Louis Rosado. Anrair Clay testified that she bought a six-pack of Pabst beer sometime after 8:30 p. m. on February

---

5. It should be noted that, for whatever reasons, the State apparently did not rely on the waiver theory in this petitioner's postconviction proceedings, nor did either state court.

6. In light of Mrs. Clay's testimony that she spoke with her sister as late as 8:10 a. m. and

Mr. Cates' testimony that he may have seen Mr. Fulton as early as 8:30 a. m. and that he seemed normal then, it may be unlikely that petitioner committed the crime before he went to Cates' store, but it is possible.

27, 1973, there being no beer in the refrigerator then (T. 104). Four cans were consumed by Mrs. Clay and Joyce Fulton. The police found a can of Pabst and a soft drink can on the night table beside the victim's bed (T. 204), and subsequently identified the fingerprints of Mr. Rosado on the beer can.[7] Mr. Rosado testified that he had stopped by to see Mrs. Fulton around 6:30 or 7 p.m. on February 27 (T. 460). He also testified that he worked from 5 or 5:30 a. m. to around 11:30 a. m. on February 28. No contradictory evidence was introduced.

An oral statement of Mr. Fulton, found to have been made voluntarily, was admitted at trial. Detective Berkowski testified that when Mr. Fulton was first questioned about his wife's murder and was told she had apparently been beaten with an ax, he said: "That's a fucking lie." The detective asked how Fulton knew it was not an ax, and he said, "I know. That's why" (T. 254) and "it was a . . . ." Mr. Fulton was first questioned on the evening of February 28, 1973, after he had turned himself in to the police. A benzidene test for the presence of blood on Mr. Fulton's hands was positive, showing traces of blood around the cuticle areas of three fingernails (T. 326–30).

█ Although there was ample evidence to sustain petitioner's conviction, an error cannot be deemed harmless if it might have contributed to the jury's verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This Court must be convinced beyond a reasonable doubt that it could not have. *Id.* An instruction shifting the burden of proof as to an element of a crime might in some circumstances be harmless error. *Krzeminski v. Perini,* 614 F.2d 121, 125–26 (6th Cir. 1980).

A number of courts have held that a burden-shifting alibi instruction is not harmless error. *E. g., Trimble v. Stynchcombe,* 481 F.2d 1175 (5th Cir. 1973) (per curiam); *Stump v. Bennett,* 398 F.2d 111, 122 (8th Cir.) cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); *Rogers v. Redman,* 457 F.Supp. 929, 934–35 (D.Del. 1978). A few cases, including one in this district, state that the giving of such an instruction cannot be harmless error. *Poole v. Georgia,* 551 F.2d 683, 685 (5th·Cir. 1977) (per curiam) (dictum); *Graham v. Maryland,* 454 F.Supp. 643, 651 (D.Md.1978). So far as this Court has been able to determine,[8] the alibis in the reported cases have covered at least a substantial portion of the time in which the crime was committed or have placed the defendant far from the scene of the crime.

█ This Court concludes that, in the very limited circumstances of this case, the doctrine of harmless error applies and that the constitutional error here was harmless. Petitioner's alibi covered an extremely short period of time, and he was placed by it only a few minutes' walk from the crime. An alibi would certainly not need to cover all the pertinent time for this Court to find, beyond a reasonable doubt, a possibility that an erroneous instruction contributed to the jury's verdict. In this case, however, with an alibi covering only five minutes[9] out of nearly three hours in which the crime might have been committed, this Court finds that there is no more than a remote possibility that the erroneous instruction contributed to the jury's verdict and that the error was harmless beyond a reasonable doubt.

---

**7.** The police had not tried to identify the fingerprint before Mr. Fulton's trial but did so during the course of the trial (T. 431–32). Fulton's fingerprint was on the soft drink can, also found on the night table (T. 264, 371).

**8.** It is not clear from the facts recited in some cases, *e. g., Trimble v. Stynchcombe,* 481 F.2d 1175 (5th Cir. 1973), what period of time was covered by the alibi.

**9.** As the state postconviction court noted, uncontroverted testimony at trial was that petitioner had been in New Jersey from January 2, 1973 through February 27, 1973 (T. 95). Thus, the possibility that a jury might have believed that petitioner was on his way to work, as he told Cates, and that he did go to work, is extremely unlikely.