Turner THOMAS, Petitioner-Appellee,

v.

Charles ANDERSON,
Respondent-Appellant.

No. 80–1505.

United States Court of Appeals,
Sixth Circuit.

Argued March 9, 1982.

Decided March 22, 1982.

Robert A. Derengoski, Sol. Gen., Frank J. Kelley, Atty. Gen. of Michigan, Thomas L. Casey, J. Peter Lark, Asst. Attys. Gen., Correctional Division, Eric Eggan, Lansing, Mich., for respondent-appellant.

Robert D. Vanderlaan, Grand Rapids, Mich. (court-appointed), for petitioner-appellee.

Before BROWN and KENNEDY, Circuit Judges, and BALLANTINE *, District Judge.

## ORDER

The government appeals from a decision by the District Court granting a petition for a writ of habeas corpus. 28 U.S.C.A. § 2254. Two issues are raised on appeal; first, whether the state court's jury instructions impermissibly shifted the burden of proof to the petitioner on the essential element of intent to commit first degree murder; and second, assuming *arguendo* that the instructions were constitutionally infirm, whether habeas relief was inappropriate because petitioner failed to object to the jury instructions at the time they were given and failed to establish cause for his failure to object and prejudice as a result of the instructions.

Tewana Adams was shot and killed on April 22, 1972. Petitioner Thomas was identified as the assailant by Lula Jenkins who had known both men for eighteen years. Petitioner defended on the basis of alibi.

Jenkins testified that she was in the company of Adams on the date of the killing. They went to a local gambling house. Ad-

ams entered and she remained in the car. Following an argument inside the house, Adams and petitioner exited, entered their respective cars and drove off. Petitioner drove a yellow Buick and Adams, a red Chevrolet. About two miles from the house, petitioner forced Adams off the road. Jenkins saw petitioner pull a gun on the unarmed Adams, who asked him not to shoot him. Petitioner shot Adams and Jenkins ran off to call the police.

A security guard patrolling in the area testified that he observed a cream colored Buick run a red Chevrolet off the road. Two men jumped out of the cars and met at the back of the vehicles. One man had his hands in the air and did not appear to possess a gun. The armed man shot the other, jumped back into his Buick and drove away. A female exited the red Chevrolet after the shot was fired.

Petitioner testified on his own behalf that he owned an eggshell white Buick, that he was at the gambling house with Adams on the day that he was killed but that there was no argument and after he left, he went straight home. He claimed he was driving along I–94 on his way to Chicago to pick up his father at the time Adams was killed. Petitioner arrived in Joliet around 9:30 p. m. that night, returned home the next evening when, he testified, he first learned of Adams' death and was arrested on his way to work Monday morning.

The jury was instructed in part:

The law implies from an unprovoked, unjustifiable or inexcusable killing, the existence of that wicked disposition which the law terms malice aforethought. If a man kills another suddenly and without provocation, the law implies malice and the offense is murder. If the provocation is such as must have greatly provoked him, so that he acted from sudden passion, caused by some great provocation, the killing would be manslaughter.

---

* The Honorable Thomas A. Ballantine, Jr., Judge, U.S. District Court for the Western District of Kentucky, sitting by designation.

The instrument with which the killing was done may be taken into consideration because the intention to kill, in the absence of evidence showing a contrary intent, may be inferred from the use of a deadly weapon in such a manner that the death of the person assaulted would be an inevitable consequence.

There were no objections to the above-mentioned instructions. Petitioner was convicted by a jury and given the mandatory life sentence. His conviction was affirmed on direct appeal to the Michigan Court of Appeals on grounds which did not include a challenge to these instructions. In January 1975, the Michigan Supreme Court appointed the State Appellate Defender Office to continue Thomas' appeal in the state courts. Counsel filed a delayed motion for a new trial, raising the instruction issue for the first time. The state trial court denied relief because there had been no objection at trial and no miscarriage of justice. In July 1977, the Michigan Court of Appeals denied petitioner's application for leave to appeal for lack of merit on the issues presented. His application to the Michigan Supreme Court was denied in November 1977, and reconsideration was denied in May 1978.

The District Court determined that petitioner had exhausted his state court remedies and granted him habeas relief on the ground that these jury instructions would lead a reasonable juror to conclude that he must find intent once he found either an unprovoked killing or use of a deadly weapon. The District Court did not address the possibility of harmless constitutional error.

We find it unnecessary to decide whether these instructions cause an impermissible shift in the burden of proof. Assuming constitutional error exists in the instructions such error would be harmless since the intent of the assailant was never in issue and the facts of the case provide ample evidence of the requisite intent. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Reeves*, 594 F.2d 536 (6th Cir.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979).

Accordingly, the decision of the District Court granting petitioner's writ of habeas corpus is reversed.