Lionel CONWAY and Lee Lawrence, Jr.,
Petitioners-Appellants,

v.

Charles ANDERSON,
Respondent-Appellee.

No. 81–1606.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 26, 1982.

Decided Jan. 21, 1983.

Paul Schaefer, Prison Legal Services of Michigan, Jackson, Mich., for petitioners-appellants.

Frank J. Kelley, Atty. Gen. of Mich., Thomas C. Nelson, Asst. Atty. Gen. (argued), Lansing, Mich., for respondent-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and NEESE, District Judge.*

KRUPANSKY, Circuit Judge.

Lionel Conway (Conway) and Lee Lawrence (Lawrence) appeal the dismissal of their petition for a writ of habeas corpus. 28 U.S.C. § 2254. Evidence presented at trial discloses that on January 17, 1974, petitioners were in the company of Sherman Billingsley (Billingsley), Robert Stedman (Stedman) and Susan Krezen (Krezen). The five individuals had driven in a Chrysler automobile to a record shop in search of

---

* The Honorable C.G. Neese, United States District Court for the Eastern District of Tennes-   see, sitting by designation.

a mutual acquaintance. Unsuccessful in their endeavors to locate this person, petitioners returned to the parked Chrysler, sat in the rear seat, immediately drew revolvers and demanded money from Billingsley, Stedman and Krezen all of whom were seated in the front seat. When none was forthcoming petitioners exited the automobile and at close range commenced firing repeatedly at the three people remaining in the vehicle. Krezen was struck by a bullet which made "a hole in the top of her head", killing her instantly. Stedman also died instantly from wounds to the head and chest. Billingsley, who occupied the driver's seat at the time of the homicidal attack, was fired upon by Lawrence whose weapon was approximately six inches from Billingsley's head, striking the victim in the face and causing him to "just [fall] over in the seat." He was thereafter shot in the left shoulder, right shoulder and back. Collectively petitioners discharged their weapons approximately nine or ten times.

The fusillade of shots miraculously failed to kill Billingsley who was able to flee in the Chrysler. Petitioners and one Charles Blackmore (Blackmore) pursued the escaping survivor in a Cadillac which had been parked near the scene of the onslaught. As Billingsley's vehicle approached a hospital the Cadillac was intercepted by a police cruiser which engaged pursuit at high speeds until petitioners' vehicle was involved in an accident. After an exchange of weapon fire with police, petitioners and Blackmore fled on foot. Blackmore was apprehended by the police after a short chase.

Officer Frederick John LaMaire had proceeded to the vicinity of the accident in response to a police radio report. Five minutes after arriving at the scene of the accident he confronted an individual subsequently identified as Lawrence and requested identification. Lawrence struck the officer and fled on foot, pointing but not discharging his weapon. Both petitioners were arrested the following day.

Lawrence and Conway were each indicted upon two counts of first degree murder and one count of assault with intent to commit first degree murder. M.C.L.A. § 750.316; M.S.A. § 28.548. Petitioner Lawrence testified in his own behalf and claimed that the petitioners, though in the vicinity at the time of the criminal incident, had not participated in the offense. Defense counsel argued in closing that someone other than petitioners had shot the victims. Overwhelming evidence, however, was presented identifying petitioners as the perpetrators of the crime. When petitioners were arrested the day following the shooting incident, a revolver was seized from Lawrence's rear trouser pocket. It was subsequently identified through ballistic examination as one of the murder weapons. Both Conway and Lawrence were identified by Billingsley, the surviving victim and eyewitness to the shooting, and Blackmore, who had driven petitioners from the scene of the murders in the Cadillac. Two other individuals who had witnessed petitioners' escape subsequent to the shootout with police also provided identification.

■ This Court, confronting the petition for a writ of habeas corpus charging instructional error, notes that petitioners were indicted on counts of first degree murder and assault with intent to commit first degree murder in violation of M.C.L.A. § 750.316 which stated at the time the indictments were issued:

FIRST DEGREE MURDER—All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life.

The jury was instructed upon the elements of premeditated murder and felony-murder and returned a general verdict of "guilty of first degree murder of Robert Stedman and Susan Ann Krezen" and "guilty of assault with intent to commit murder on Sherman Billingsley." The record fails to disclose

whether the verdict was predicated upon premeditated murder or felony-murder. Premeditated murder is a specific intent crime requiring an intention to take a life. *People v. Johnson,* 287 N.W.2d 311, 93 Mich. App. 667 (1979); *People v. Garcia,* 247 N.W.2d 547, 398 Mich. 250 (1976). The trial court instructed the jury that it could presume intent from petitioners' conduct:

I further charge you, members of the jury, that the law presumes that every person, unless relieved by some disability, contemplates and intends the natural and ordinary and usual consequences of his own voluntary acts. If a man is shown by the evidence, beyond a reasonable doubt, to have killed another by an act, the natural and ordinary consequences of which would be to produce death, then it will be presumed that the death of the deceased was designed by the slayer, unless the facts and circumstances of the killing or the evidence creates a reasonable doubt whether the killing was done purposely. When a man assaults another with a deadly weapon, and a gun is a deadly weapon, in such a manner that the natural and ordinary probable use of such deadly weapon in such a manner would take life, the law presumes that such a person so assaulting intended to take life.

■ The due process clause of the fourteenth amendment mandates that the state prove the existence of every element of a criminal offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Therefore, to the extent that the jury's verdict was predicated upon premeditated murder, the state was burdened with proving beyond a reasonable doubt that defendants possessed the requisite intent to kill. Petitioners assert that the foregoing instruction relieved the state of its burden and violated petitioners' due process rights. This contention was accepted on direct appeal, *People v. Conway,* 247 N.W.2d 317, 70 Mich.App. 629 (1976) (Kelly, J., Dissenting), but rejected by the Michigan Supreme Court, *People v. Conway,* 399 Mich. 885, 282 N.W.2d 920 (1977).

The instant jury instruction is constitutionally unsound. In the dispositive Supreme Court decision of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" was adjudged violative of the due process clause of the fourteenth amendment. The first sentence of the instant jury instruction is substantively indistinguishable from that which was adjudged constitutionally infirm in *Sandstrom.*

Retroactive application of *Sandstrom* has been recognized in this Circuit since the instructional error would normally affect a defendant's right to a fair trial and impact upon the ultimate issue of innocence or guilt. *Williams v. Engle,* 683 F.2d 152 (6th Cir.1982); *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980); *Burton v. Bergman,* 649 F.2d 428 (6th Cir.1981), *vacated and remanded on other grounds,* 456 U.S. 953, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982). Nor have such burden-shifting instructions been countenanced antecedent to *Sandstrom. See; United States v. Reeves,* 594 F.2d 536 (6th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979).

This Circuit has subjected assignments of error predicated upon alleged *Sandstrom* instructions to the harmless error test as pronounced in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *See: Krzeminski, supra.* A plea of "not guilty" joins in issue all elements of the criminal offense, *Davis v. United States,* 160 U.S. 469, 488, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895), placing the burden of proof upon the government to establish every element of the offense beyond a reasonable doubt. *In re Winship, supra.* A *Sandstrom* instruction effectively relieves the government of its constitutional burden of proving the element of requisite intent. Application of a "harmless error" analysis to a *Sandstrom* instruction, therefore, joins the issue of whether, given the evidence of record, the government's release from its constitutional

burden could have contributed to the conviction. Phrased differently, a *Sandstrom* instruction can be deemed "harmless" only if no rational juror could have concluded from the evidence of record that the perpetrator of the crime lacked the requisite intent.

■ While application of "harmless error" analysis to a *Sandstrom* instruction must comport to the unique facts of the record, the weight of authority counsels that the corrupting effect of a *Sandstrom* instruction is to a great extent a function of the defense, if any, interposed at trial. A trial defense may challenge the government's failure to prove beyond a reasonable doubt either (1) the element of *mens rea,* *e.g.* requisite intent or malice, where it is integral to the criminal offense, (2) the element of physical conduct or participation in the offense, or (3) both *mens rea* and physical conduct. Under circumstances where the defense challenges the element of *mens rea*—for example, where a defense of lack of requisite intent is affirmatively asserted at trial—a *Sandstrom* instruction which serves to frustrate this defense possesses the capability of being extremely prejudicial. *See: Harless v. Anderson,* 664 F.2d 610 (6th Cir.1981) (self-defense), *rev. and remanded on other grounds,* — U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Williams v. Engle,* 683 F.2d 152 (6th Cir. 1982) (self-defense). *See also: United States v. Williams,* 665 F.2d 107 (6th Cir. 1981); *Clark v. Jago,* 676 F.2d 1099 (6th Cir.1982); *United States v. Bohlmann,* 625 F.2d 751 (6th Cir.1980); *Nelson v. Scully,* 672 F.2d 266 (2d Cir.1982) (intoxication). *Cf.,* however, *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir.1982) (accident). Similarly, where the defense advanced challenges the prosecution's failure of proof of intent beyond a reasonable doubt, a *Sandstrom* instruction has been adjudged harmful simply because it "may have relieved the state of its obligation" even though the overall proof was substantial. *Burton v. Bergman, supra* (victim stabbed forty times).

Contrawise, however, where a defense of non-participation in the criminal act is urged at trial, such as alibi or mistaken identity, thereby accenting the physical rather than the *mens rea* element of the crime, the effect of a *Sandstrom* instruction as a factor upon which the verdict was predicated may diminish, particularly where the conduct or nature of the criminal offense, as reflected in the record, firmly negates any reasonable possibility that the perpetrator of the crime, whoever it may have been, lacked the requisite intent or malice. *See, e.g.: McGuinn v. Crist,* 657 F.2d 1107 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982) (alibi defense); *United States v. Winter,* 663 F.2d 1120, 1143–45 (1st Cir. 1981) (defense of non-participation); *United States v. Reeves,* 594 F.2d 536 (6th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979) (defense of non-participation); *Thomas v. Anderson,* 675 F.2d 781 (6th Cir.1982) (alibi defense); *Cf: Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.1980).

While the foregoing principles provide general guidance, the ultimate inquiry of whether a *Sandstrom* instruction is harmless must rest upon the peculiar facts before the Court. In the action *sub judice,* the defense of non-participation was advanced at trial: petitioners denied having been the persons who committed the crime. However, the jury verdict of "guilty" strongly supports the conclusion that the state proved beyond a reasonable doubt that defendants *physically* participated in and were the perpetrators of the criminal offense. The pertinent inquiry, therefore, is whether a rational factfinder might have concluded that the defendants, once identified as the perpetrators, lacked the requisite intent to commit the criminal offense had not the state been relieved of its responsibility to prove the same. The inference of intent is inescapable from the vicious nature of the criminal act. The proximity of the perpetrators to their victims, the deadliness of the weapons utilized, the repetitious firing of the weapons, the flight following the act, the shoot-out with police during flight and other circumstances surrounding the shooting incident counsel that the homicidal attack was neither a negligent nor reckless act. No rational juror could have concluded that the perpetrators of the crime lacked the requisite intent to

kill their victims. The *Sandstrom* instruction cannot be adjudged by even the most fertile imagination to have contributed to the convictions. Rather, the questionable jury instruction was harmless beyond a reasonable doubt. *Chapman, supra; Harrington, supra.* Upon reaching this conclusion, petitioners related assertion that effective assistance of counsel was denied for failure to object to the instruction must necessarily also be adjudged specious. *Beasley v. United States,* 491 F.2d 687 (6th Cir.1974).

Last, it is observed that petitioners were not denied their sixth amendment right to confront and cross-examine the prosecution's witness and victim of the attack Sherman Billingsley; the trial court did not abuse its discretion for failure to *further* continue the trial. Nor have petitioners asserted a viable basis for habeas corpus relief predicated upon introduction of evidence obtained in alleged abrogation of the fourth amendment or upon ineffective assistance of counsel for failure to move to suppress or object to the introduction of such evidence. *Beasley, supra.*

The judgment of the district court dismissing the petition for a writ of habeas corpus is hereby AFFIRMED.

Senior District Judge Neese concurs in the result.