Tilden N. ENGLE, Petitioner-Appellant,

v.

Theodore KOEHLER, Warden, Respondent-Appellee.

No. 82–1470.

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1983.

Decided May 9, 1983.

John Nussbaumer, State Appellate Defender (argued), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Thomas Nelson (argued), Lansing, Mich., for respondent-appellee.

Before CONTIE and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CONTIE, Circuit Judge.

Tilden Engle appeals from a district court order dismissing a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Engle was convicted in Michigan in July, 1973 of first degree murder and was sentenced to life imprisonment without possibility of parole. The sole issue is whether the trial court's jury instructions on the issues of malice and intent constitute reversible error under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We reverse the judgment of the district court.

I.

The facts are undisputed. The petitioner, a resident of Detroit, was laid off from his job with Chrysler Corporation on December 4, 1972. Engle suffered from alcoholism and claims that he drank heavily between December 4 and December 7, the date of the events in question. On that date, Engle returned to the plant shortly after 9:00 p.m. and told Renus Engle, a nephew who also worked for Chrysler, that he was going to kill someone. The nephew testified that the petitioner had tears in his eyes and had a nervous pitch in his voice, a condition in which Renus had never seen his uncle. Renus also stated that although the petitioner had been drinking, he was not drunk.

The defendant then sought Regis Lantzy, who Engle thought was responsible for the layoff. The petitioner went to the office of Donald Ambrose, clerk, and asked for Lantzy. Ambrose told Engle that Lantzy was not present and the defendant stated that he would find him. Ambrose testified that Engle "didn't look quite right—he looked like something was troubling him" and "I had never seen the man before and he looked so strange."

Shortly thereafter, Engle found Lantzy in the plant. In front of several workers, Engle drew a gun and shot him. Lantzy tried to run but the petitioner shot him several more times. Engle briefly stood over the body and then returned to Ambrose's office where he surrendered to a security guard. Ambrose testified that he asked who had been shot and the defendant responded, "Regis Lantzy." When asked why he had killed Lantzy, Engle said, "because he fucked over me." The security guard testified that the petitioner further

stated that Lantzy had been shot because "a man can only take so much, he's dead, he ain't going to bother nobody any more" and "I am a man; nobody wants to be walked over by nobody." The guard stated that he could smell alcohol on the petitioner's breath. Two police officers who later arrived on the scene did not detect the odor of alcohol.

On December 8, Engle gave the following written statement to the police:

I was laid off from Chrysler on Monday, December 4, 1972. Tuesday, Wednesday and Thursday, I drank over a fifth of whiskey each day. Thursday night I took my gun from my bedroom and put it in my—pocket. It was about 9:00 p.m. I knew lunch at Chrysler was from 9:00 to 9:30 p.m. I went to Chrysler's and walked in with some other people who had been out to lunch. I went to Department 9130. I stood in the back and watched for Lantz [sic]. When I saw Lantz I walked towards him and met him. He started to say something like "what the hell are you doing here," or something like that. I didn't let him get it all out. I just pulled the gun out and he said, "oh no," and then I shot him twice. He turned and ran and I shot him in the back. He fell and I shot him again. I don't know if I hit him. I saw blood gushing from his mouth and I knew he was dead.

[s/Tilden Engle.]

At trial, Engle's sole defense was temporary insanity because of the effects of alcohol, drugs and dissociative reaction, a temporary mental disorder which is often accompanied by memory loss. Engle testified that he had consumed four librium pills together with large amounts of whiskey on December 7. He further stated that he remembered nothing between the time he was home drinking and the moment when he awoke in jail except for a nightmare-like experience in which he felt fur flying in his face and saw Lantzy on the floor bleeding from the mouth. He did not recall making any statement to the police.

Both sides presented psychiatric testimony. Doctor Ansley testified for the defense that Engle had suffered a dissociative reaction as a result of several incidents, including five recent deaths in the family, suicide attempts by Engle and another member of the family and the layoff. Petitioner's drinking had compounded the problem. Dr. Ansley concluded that from a medical standpoint, Engle was not responsible for his actions.

Dr. Edgar testified, however, that although the defendant was an alcoholic, he had not suffered from dissociative reaction. Dr. Edgar opined that Engle was capable of knowing right from wrong at the time of the killing and had not suffered from an irresistible impulse.

The trial judge instructed the jury as follows on the issues of malice and intent:

Malice is used in a technical sense, including not only anger, hatred and revenge but every other unlawful and unjustifiable motive. It is not confined to particular ill will to the deceased but is intended to denote an action flowing from any wicked and corrupt motive, where the fact has been attended with such circumstances as to carry in them the plain indication of a heart, regardless of social duty and fatally bent upon mischief and, therefore, *malice is implied from any deliberate and cruel act against another person,* however sudden.

Malice in homicide cases has been defined in another way, as the intentional killing of another person without excuse, justification or provocation, and this brings into the case the question of intent.

We, of course, do not have the power to look into a person's mind to tell what that person is thinking at any particular time, *but the law gives us a rule of thumb that a person is presumed to intend the natural consequences of his acts.* It is somewhat like the old saying that actions speak louder than words. Therefore, in determining whether there was an intent to kill, the jury may properly consider that a deadly weapon was used and I instruct you that a pistol is a deadly

weapon within the meaning of this instruction.

The jury may properly consider the number and the location of the wounds that were caused to the deceased and you may consider, for instance, that—whether or not the wounds were wounds caused by holding the weapon directly against the body of the deceased. I think that would be a proper consideration. The jury may consider all of these things in determining whether or not there was an intent to kill in this case. Whether there was malice, and, as I say, malice is an element of the crime of murder whether in the first degree or the second degree, which must be proved to your satisfaction and beyond a reasonable doubt. (Emphasis supplied.)

The court had earlier given general instructions on the presumption of innocence and proof beyond a reasonable doubt. Engle now claims that the above quoted instructions on malice and intent constitute reversible error.

## II.

■ Jury instructions in a criminal case must be evaluated not in isolation, but in the context of the overall charge. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The Supreme Court has also held that the charge shall not instruct the jury conclusively or rebuttably to presume the presence of an element of a crime; to do so relieves the state's burden to prove guilt beyond a reasonable doubt. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[1] The test is whether any "reasonable juror could have given the presumption conclusive or persuasion-shifting effect...." Id. at 519, 99 S.Ct. at 2452. In *Sandstrom,* the court invalidated an instruction which stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Since this language is very similar to that used in the present case, we must evaluate the trial court's instruction in light of *Sandstrom.*

The respondent counters that since Engle did not object to the challenged instructions at trial, he must demonstrate cause and actual prejudice rather than merely showing that a rational juror might have impermissibly relied upon a presumption. *See Fornash v. Marshall,* 686 F.2d 1179 (6th Cir.1982). *Fornash* is distinguishable, however, because the Michigan courts do not enforce a contemporaneous objection rule against failures to object to *Sandstrom* instructions. *People v. Wright,* 408 Mich. 1, 30 n. 13, 289 N.W.2d 1 (1980). Consequently, the cause and prejudice analysis of *Fornash* is inapplicable to this case.

## III.

The district court held that no rational juror could have believed that the instructions in this case mandated a finding that the petitioner intentionally and maliciously killed Lantzy. The court noted that immediately after the trial judge instructed the jury that the law provides "a rule of thumb that a person is presumed to intend the natural consequences of his acts," he listed several items for the jury to consider in deciding whether or not the requisite malice and intent had been proven by the state. Requiring the jury to weigh these factors was held to be inconsistent with the presence of a conclusive presumption. The court further indicated that in order for a juror to have given the challenged instructions conclusive effect, the juror would have had to disregard intoxication and insanity instructions which were relevant to the malice and intent issues. The court therefore held that the instructions in question could not have been interpreted as establishing a conclusive presumption.

■ What the district court did not recognize, however, is that the challenged instructions reasonably could have been interpreted by the jurors as setting forth a presumption which, while not conclusive, shifted to the defendant the burden of proving

1. This circuit has applied *Sandstrom* retroactively. *See, e.g., Conway v. Anderson,* 698 F.2d 282, 284 (6th Cir.1983).

the absence of malice and intent. As had been indicated, such burden-shifting presumptions are invalid under *Sandstrom.* *See also Phillips v. Rose,* 690 F.2d 79, 81 (6th Cir.1982).[2]

The trial court instructed the jury that in Michigan, both malice and intent are elements of first degree murder. The court nevertheless stated that "malice is implied from any deliberate and cruel act against another person" and that "the law gives us a rule of thumb that a person is presumed to intend the natural consequences of his acts." Since a reasonable juror could have thought that these instructions required findings of malice and intent absent proof to the contrary by the defendant, the instructions are indistinguishable from those invalidated in *Sandstrom.*

The state makes several responses. First, the instructions did not include the phrase "the law presumes" as in *Sandstrom,* but only that the law provides a "rule of thumb." In common parlance, however, a "rule of thumb" is a directive that is generally to be followed, albeit with exceptions. Thus a reasonable juror in this case could have inferred that he was to presume intent unless the defendant proved otherwise. An instruction need not track the precise language of the instruction in *Sandstrom* in order to be invalid. The question is one of burden-shifting effect, not of verbal formulation.

Second, the state argues that any error in the instructions was cured by the general instructions on the presumption of innocence and on proof beyond a reasonable doubt. Furthermore, the trial judge purportedly remedied any error by repeating the beyond a reasonable doubt standard at the end of the malice and intent instructions.

We disagree. The instructions on the presumption of innocence and on proof beyond a reasonable doubt are not rhetorically inconsistent with the existence of a burden-shifting presumption because a reasonable juror could have regarded the presumptions on malice and intent as "a means by which proof beyond a reasonable doubt ... could be satisfied." *Sandstrom,* 442 U.S. at 518–19 n. 7, 99 S.Ct. at 2456 n. 7; *Phillips,* 690 F.2d at 81. Thus, in evaluating circumstances such as the use of a deadly weapon and the number and location of Lantzy's wounds, the jury may have presumed that absent rebuttal by the defendant, these facts constituted proof beyond a reasonable doubt of malice and intent.

In addition, the set of instructions at issue contained other presumptive language. The trial judge stated that a person is presumed to be of sound mind, is presumed to be sane and responsible for his acts and is presumed to have intended the obscuration of mind which accompanies voluntary intoxication. On the question of dissociative reaction, the court instructed that the presence of such a mental defect constitutes a defense "where this can be proven." While these instructions may have been valid,[3] they nevertheless could have reinforced the notion in the mind of a rational juror that the burden-shifting effect of the malice and intent instructions was proper. *Cf. Phillips,* 690 F.2d at 81 (other malice instructions reinforced the effect of the challenged malice instruction). Viewing the jury charge as a whole, we conclude that the challenged instructions are unacceptable under *Sandstrom.*[4]

---

2. The respondent cites *Jacks v. Duckworth,* 651 F.2d 480, 485 (7th Cir.1981), *cert. denied,* 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982), which upheld an instruction so long as "any presumption of 'a criminal intent from an unlawful act knowingly done' was rebuttable by 'justifying or excusing facts'." As the dissenting judge in that case pointed out, the Seventh Circuit appears to have approved a burden shifting presumption. To the extent that *Jacks v. Duckworth* does so, we decline to follow it.

3. Since the validity of these instructions is not before the court, we neither approve nor condemn them.

4. The state relies on cases from other circuits such as *Brayboy v. Scully,* 695 F.2d 62 (2d Cir.1982); *Mancuso v. Harris,* 677 F.2d 206 (2d Cir.1982); *Rivera v. Coombe,* 683 F.2d 697 (2d Cir.1982); *Niziolek v. Ashe,* 694 F.2d 282 (1st Cir.1982). The second circuit cases involved intent instructions containing ameliorative or detailed explanatory language. Similar lan-

## IV.

The final issue for consideration is whether this error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In the recent case of *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Court divided equally on the issue of whether instructions held improper under *Sandstrom* could ever be said not to have contributed to the jury's verdict. Four justices favored a traditional harmless error approach while four others would find harmless error only in rare cases (*e.g.,* where the defendant conceded the intent issue). Justice Stevens did not reach the issue. Since the Supreme Court has not supplied clear guidance on this question, we follow the rule in this circuit that *Sandstrom* errors are subject to harmless error analysis. *See, e.g., Conway v. Anderson,* 698 F.2d 282, 284 (6th Cir.1983).

In *Conway,* this court held that the prejudicial effect of a *Sandstrom* instruction is largely a function of the defense asserted at trial. If the defendant acknowledges that an intentional, malicious killing occurred and only claims non-participation, then a *Sandstrom* instruction may be harmless. Conversely, if the defendant asserts lack of *mens rea,* a *Sandstrom* instruction can be extremely prejudicial even if overall proof of intent or malice is substantial. *See id.* at 285.

This case falls into the latter category. Engle admitted that he killed Lantzy but denied having the requisite *mens rea* to sustain a murder conviction because of the combined effects of intoxication, the librium pills and mental disease.[5] The evidence concerning these claims was conflicting. For instance, the petitioner and Dr. Ansley testified in a manner supporting the defense of dissociative reaction while Dr. Ed-

gar testified to the contrary. To some witnesses, Engle appeared calm and coherent near the time of the shooting; to others he appeared to be distraught and possibly under the influence of alcohol. Under these circumstances, we hold that the burden-shifting presumption created by the jury instructions was not harmless.

Accordingly, the judgment is REVERSED and the case is REMANDED to the district court with instructions to grant the writ.

---

guage is not present in the malice and intent instructions at bar. The *Niziolek* intent instruction contains language of permissive inference near the references to presumption, a situation not present here. We express no opinion regarding the correctness of these decisions.

**5.** This distinguishes the case from both *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.) *cert.*

*denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980), in which the defendant admitted the element of "unlawfulness" upon which the erroneous instruction was given and *McGuinn v. Crist,* 657 F.2d 1107 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982), in which the defendant argued alibi rather than lack of intent or malice.