David F. **HAGLER**, Petitioner-Appellee,

v.

William L. **CALLAHAN**, et al., Respondents-Appellants.

No. 83–4104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1984.

Decided June 28, 1985.

As Amended Aug. 15, 1985.

---

**712**

Fletcher, Circuit Judge, filed dissenting opinion.

JohnJohn Midgley, Seattle, Wash., for petitioner-appellee.

Michael P. Lynch, Olympia, Wash., for respondents-appellants.

Before FLETCHER and FARRIS, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

The State of Washington has appealed from the district court's decision, adopting a magistrate's recommendation, to grant the petition of David F. Hagler, a Washington State prisoner, for a writ of habeas corpus under 28 U.S.C. § 2254(a). The court concluded that the jury could have improperly convicted Hagler based on a jury instruction declared unconstitutional in *Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). We reverse because we find the *Sandstrom* error harmless beyond a reasonable doubt based on our decision in *McGuinn v. Crist,* 657 F.2d 1107 (9th Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982).

### I. *Facts*

In 1976 a jury found Hagler guilty of second degree murder in the shooting death of an associate named Leif Eric Ellington. The evidence against Hagler was circumstantial, and he presented an alibi defense. Without objection, the state trial court instructed the jury on intent, giving the *Sandstrom* instruction: "The law pre-

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

sumes that every person intends the natural and probable consequences of his own acts." *See Sandstrom v. Montana,* 442 U.S. 510, 515, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979) (holding a similar instruction unconstitutional because a jury could have interpreted it to create a "conclusive" or "burden-shifting" presumption of intent where intent is a necessary element of the crime for the State to prove). *Id.* at 524, 99 S.Ct. at 2459. Notice of appeal was filed, but neither Hagler nor his trial counsel pursued it.

In 1978 Hagler filed a personal restraint petition[1] in state court challenging the *Sandstrom* instruction but was denied relief. In 1980 Hagler again challenged the instruction in a second personal restraint petition, and the Washington Court of Appeals certified the case to the Washington Supreme Court. The Supreme Court denied relief because it found that Hagler did not raise lack of intent as a defense at trial and thus failed to demonstrate "that he was actually and substantially prejudiced by the instruction that intent could be presumed." *Matter of Hagler,* 97 Wash.2d 818, 650 P.2d 1103, 1109 (1982).[2]

Having exhausted his state remedies, Hagler filed the present petition in federal district court under 28 U.S.C. § 2254(a). The case was referred to a magistrate who initially recommended denying the petition because the *Sandstrom* error was harmless beyond a reasonable doubt, relying on *McGuinn v. Crist,* 657 F.2d 1107 (9th Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). On reconsideration, however, the magistrate reversed himself and recommended issuing the writ of habeas corpus. Citing *Connecticut v.*

*Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the magistrate found: (1) "[the] issue of intent was never affirmatively conceded;" and (2) "substantial evidence was introduced which could have led a jury to conclude that the homicide, regardless of who did it, was something less than intentional." These factors, the magistrate concluded, were sufficient to make this case "readily distinguishable from *McGuinn v. Crist*" and to compel the conclusion that the *Sandstrom* error was not harmless beyond a reasonable doubt. The district court adopted the magistrate's recommendations and issued the writ.

The sole issue before this court is whether the constitutional error in giving the *Sandstrom* instruction is harmless beyond a reasonable doubt.

## II. *Connecticut v. Johnson*

Since our decision in *McGuinn,* the Supreme Court, in a plurality opinion, held that the *Sandstrom* error could be harmless only in "rare situations in which the reviewing court can be confident that [the] ... error did not play any role in the jury's verdict." *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983). The Court, however, decided to "leave it to the lower courts to determine whether, by raising a particular defense or by his other actions, a defendant himself has taken the issue of intent away from the jury." *Id.* at 978.

## III. *In re Hamilton*

Quoting from *Connecticut v. Johnson,* this court recently observed that the Sandstrom error might not play a role in a jury's verdict "where intent was not in

---

1. "A personal restraint petition requires the court to adjudicate whether the petitioning prisoner is presently detained in violation of either the United States Constitution or the Constitution of the State of Washington." *In re Myers,* 91 Wash.2d 120, 587 P.2d 532, 533 (1978), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979).

2. The State premises two of its contentions on the findings of the Washington Supreme Court. First, the State argues that the federal district court, like the state court, should have imposed

a threshold burden on the petitioner to show (1) cause for his failure to object to the instruction at trial and (2) prejudice resulting from the instruction. Second, the State contends that the district court failed to accord the findings of the state court the presumption of correctness to which they are entitled under 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). Since we reverse on the basis of our decision in *McGuinn v. Crist,* we do not reach these two contentions.

issue nor in dispute" at trial. *In re Hamilton*, 721 F.2d 1189, 1190 (9th Cir.1983). Conversely, the court also held that "[i]f a criminal defendant's intent is a disputed issue at trial, the reviewing court cannot rationally conclude beyond a reasonable doubt that an unconstitutional *Sandstrom* instruction given to a jury did not taint its verdict even if substantial evidence of intent exists." *Id.* at 1191.[3]

■ The *Hamilton* court announced a two-step inquiry for determining whether the *Sandstrom* error was harmless. First, the reviewing court must determine whether intent was disputed at trial; if it was, then the error cannot be harmless. If intent was not disputed, then the second step is to determine "whether any 'reasonable juror could have given the presumption conclusive or persuasion-shifting effect.'" *Id.* at 1192. The second step is simply a restatement of the well-established inquiry in all harmless constitutional error cases, namely whether the reviewing court can say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). As for the first step, we recognize, of course, that a plea of "not guilty" "controverts the existence of every fact essential to constitute the crime charged." *Davis v. United States*, 160 U.S. 469, 485–86, 16 S.Ct. 353, 357, 40 L.Ed. 499 (1895). In this case, however, whether intent was disputed at trial is a more narrow question. It involves a determination of whether, under the special facts of each case, intent was a live issue, the subject of a minimum of dispute as a practical matter to trigger the corrupting impact of the *Sandstrom* instruction. It is in significant

degree determined by the defense presented, the manner of presentation, and the evidence introduced by both parties. *See Conway v. Anderson*, 698 F.2d 282, 285 (6th Cir.1983).

Beginning the two-step inquiry under the present facts, it is at once plain that intent was not disputed at Hagler's trial. In reaching this conclusion, we rely on our decision in *McGuinn v. Crist*, 657 F.2d 1107 (9th Cir.1981), *cert. denied*, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982).

### IV. *McGuinn v. Crist*

In *McGuinn v. Crist* a Montana jury found McGuinn guilty of deliberate homicide in the shooting death of LaRae Alley. The jury had been given the *Sandstrom* instruction on intent. The evidence against McGuinn was circumstantial: the victim was shot four times in the head; McGuinn was seen near the murder site at about the time of the murder; he owned a gun and bullets matching the general description of those used in the crime; he gave conflicting testimony while testifying on his own behalf and his testimony was impeached by other witnesses. 657 F.2d at 1108. Most important, McGuinn relied solely on an alibi defense. *Id.*

■ In this case Hagler also relied on an alibi defense in the face of circumstantial evidence: the victim was shot three times, twice in the head and once in the abdomen; one of the shots was fired from a distance of 12–18 inches; Hagler was seen with the victim, who was his business associate, shortly before the murder; a gun, belonging to Hagler and matching the description of the weapon used in the shooting, was found in a river not far from the murder scene; witnesses who saw Hagler with the

---

**3.** Hamilton had been convicted in state court of mitigated deliberate homicide of his mother. The case was remanded for a review of the record to determine whether intent was in fact a disputed issue at Hamilton's trial. *In re Hamilton* is factually distinguishable from the instant case. As this court noted in its opinion: "Hamilton contends that intent was very much at issue. He asserts that he did not know what he was doing, that he did not recall the act, and

that he did not knowingly or purposely kill his mother. Hamilton also presented psychiatric testimony as to his rather bizarre relationship with his mother as well as his history of alcoholism and blackouts from drinking relatively small amounts of alcohol. He also presented psychiatric testimony that at the time of the killing he suffered from a schizophrenic reaction and was subject to psychological stress with severe distortion of judgment and perception."

victim shortly before the murder testified that Hagler later requested them to lie to the police.[4] Like McGuinn, "Hagler's main defense was that he had not shot Ellington, and was not present when Ellington was shot."

In *McGuinn* we held that "[i]nsofar as the jury would beyond a reasonable doubt have reached the same conclusion [on the evidence presented], even absent the disapproved jury instruction, the error complained of here is harmless." 657 F.2d at 1108. Alternatively, we also pointed out "that a disapproved jury instruction concerning intention in a trial in which the intention of the accused was not an issue is harmless error beyond a reasonable doubt." *Id.* Because *McGuinn* presented an alibi defense and did not dispute intent at trial, we concluded that the *Sandstrom* error was harmless. *Id.* at 1109.

Since Hagler similarly relied solely on an alibi defense, it is difficult for him now to contend that his own intent or that of an anonymous assailant was disputed at trial. Nonetheless, he contends, and the district court found, that "substantial evidence was introduced which could have led a jury to conclude that the homicide, regardless of who did it, was something less than intentional." The "substantial evidence" consists of four undisputed facts: (1) the victim had a bad temper; (2) the victim drank to excess; (3) the victim owned and was known to recklessly handle guns; (4) any shot fired in the victim's small trailer

would necessarily have been fired at close range.

The district court concluded that these facts significantly distinguish this case from *McGuinn.* We disagree. The facts may tell us something of the victim's general character, but they say nothing of the assailant's intent at the time of the murder. Taken together, these facts are simply insufficient to make intent a disputed issue for the purposes of this inquiry. Moreover, the facts most strongly reflecting on intent are undisputed: the victim was shot three times, twice in the head, and one of the shots was fired at point-blank range. As in *McGuinn,* the defendant's reliance on alibi and the lack of contrary evidence on intent make it plain that intent was not disputed at Hagler's trial.[5]

Having found that intent was not contested at trial, the court must next assess the weight of the evidence against the defendant to determine whether we can conclude "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828; *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *In re Hamilton,* 721 F.2d at 1192. We have already noted that the evidence of intent, though necessarily circumstantial, was uncontradicted at trial. As the court observed in *McGuinn,* the victim "was shot four times in the head at close range firmly negating any reasonable possibility that the killing occurred as a result of reckless-

---

**4.** For a more detailed statement of the facts *see Matter of Hagler,* 650 P.2d at 1105–1106. The court concluded, *inter alia,* that nothing in the record suggests that the victim's death was "unintentional." *Id.* 1106.

**5.** Petitioner also argues, and the district court found, that "[t]he issue of intent was never affirmatively conceded." As is clear from our decision in *McGuinn,* however, no affirmative concession is required of the defendant to render an element of the crime undisputed. 657 F.2d at 1108–09. The Supreme Court did not require an affirmative concession in *Connecticut v. Johnson* when it left the lower courts free to determine "whether, by raising a particular defense or by his other actions, a defendant

himself has taken the issue of intent away from the jury." 103 S.Ct. at 978. Even though it was clear in *Hamilton* that the defendant did not affirmatively concede the issue, we remanded the case to the district court to determine, "after an independent review of the state court record," whether intent was contested at trial. 721 F.2d at 1192. *See also Engle v. Koehler,* 707 F.2d 241, 246 (6th Cir.1983), *aff'd.,* — U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984) (equally divided court); *Conway v. Anderson,* 698 F.2d 282, 285 (6th Cir.), *cert. denied,* 462 U.S. 1121, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983) ("the corrupting effect of a *Sandstrom* instruction is to a great extent a function of the defense, if any, interposed at trial.")

ness or negligence." 657 F.2d at 1108. Here the facts are slightly less egregious, but the victim's three bullet wounds—two in the head, one in the abdomen, and one of those at point-blank range—lead us to the same conclusion. Judging from the evidence before it and the absence of any mitigating or conflicting evidence, the jury could not possibly have concluded that the murder was other than intentional.[6] We are convinced that giving the *Sandstrom* type instruction did not contribute to the jury's guilty verdict.

## V. *Conclusion*

The court concludes that this case is controlled by our decision in *McGuinn v. Crist.* Having found that intent was not contested at trial and that giving the *Sandstrom* instruction did not contribute to the guilty verdict, we conclude that the error complained of was harmless error beyond a reasonable doubt. Accordingly, the order of the district court granting the petition for a writ of habeas corpus is reversed.

REVERSED.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent.

I agree with the majority that the trial court's instruction on intent violated Hagler's fourteenth-amendment due process rights by relieving the state of part of its burden of proof in a criminal prosecution, *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 521, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979), and that the sole issue for this court to resolve is whether the trial court's acknowledged "constitutional error in giving the *Sandstrom* instruction is harmless beyond a reasonable doubt."[1] The Supreme Court has recently questioned whether giving a *Sandstrom* instruction can ever constitute harmless error. *See Francis v. Franklin,* 105 S.Ct. at 1977; *Davis v. Kemp,* —— U.S. ——, ——, 105 S.Ct. 2689, 2690, 86 L.Ed.2d 707 (1985) (White, J., dissenting from denial of certiorari) (indicating that the Court has had four opportunities recently "to decide whether *Sandstrom* error may be harmless under any circumstances"); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 978, 74 L.Ed.2d 823 (1983) (plurality opinion) ("[*Sandstrom*] error deprived respondent of 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'"). This circuit has held that *Sandstrom* error can be harmless under certain limited circumstances. *See e.g., In re Hamilton,* 721 F.2d 1189, 1190–91 (9th Cir.1983); *McGuinn v. Crist,* 657 F.2d 1107, 1108–09 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). Because I conclude that Hagler's

---

**6.** In denying Hagler's petition for restraint, the Supreme Court of Washington, after reviewing the evidence, likewise noted that Hagler had not raised lack of intent as a defense at trial, and that nothing in the record suggests that the victim's death was not intentional. *Matter of Hagler,* 650 P.2d at 1109. Accordingly, assuming that it was error to give the challenged instruction, the court was satisfied from its "review of the records" that Hagler was not prejudiced by the assumed error. *Id.* 1105.

**1.** As the majority notes, the Washington Supreme Court concluded that Hagler did not raise lack of intent as a defense at his trial, and implicitly ruled that the trial court's *Sandstrom* error was harmless beyond a reasonable doubt. *See In re Hagler,* 97 Wash.2d 818, 650 P.2d 1103, 1109 (en banc). The harmless error determination clearly involved a mixed question of fact and law; would also characterize as a mixed

question the issue of whether sufficient evidence was introduced at trial to make lack of intent a disputed issue. *See United States v. McConney,* 728 F.2d 1195, 1202–03 (9th Cir. 1984). As a result, neither of the Washington Supreme Court's conclusions involved a strictly "factual issue," and therefore, neither must be "presumed to be correct" by this court under 28 U.S.C. § 2254(d) (1982) in its habeas review. *See Sumner v. Mata,* 449 U.S. 539, 544–548, 101 S.Ct. 764, 767–769, 66 L.Ed.2d 722 (1981). Even if the question of whether intent was a disputed issue at trial is treated as a factual determination, and is therefore entitled to section 2254(d)'s "presumption of correctness," I conclude, based upon the record as a whole and especially those portions discussed in this dissent, that the Washington court's determination "is not fairly supported by the record." 28 U.S.C. § 2254(d)(8); *see Sumner v. Mata,* 449 U.S. at 547–552, 101 S.Ct. at 769–771.

case does not constitute one of those "rare situations in which the reviewing court can be confident that [the] *Sandstrom* error did not play any role in the jury's verdict," *Connecticut v. Johnson*, 103 S.Ct. at 977 (plurality opinion), I would affirm the district court and grant Hagler's habeas petition.

This circuit held in *In re Hamilton*, 721 F.2d 1189 (9th Cir.1983), that unless a defendant clearly concedes or totally fails to dispute the issue of intent at his trial, a *"Sandstrom* error *cannot* be held harmless." *Id.* at 1192 (emphasis added). This court must therefore "determine whether, *by raising a particular defense or by his other actions,* [Hagler] himself has taken the issue of intent away from the jury." *Connecticut v. Johnson*, 103 S.Ct. at 978 (plurality opinion) (emphasis added). In this case, the magistrate and district judge both concluded, based upon a full review of the record, that "[the] issue of intent was never affirmatively conceded" by Hagler, and that "substantial evidence was introduced [at trial] which could have led a jury to conclude that the homicide, regardless of who did it, was something less than intentional." I agree with this assessment, and conclude as a result that the trial court's erroneous *Sandstrom* instruction was not harmless beyond a reasonable doubt.

The majority's analysis in this case is flawed in three respects. First, the majority has overstepped this court's bounds in reviewing Hagler's *Sandstrom* claim by evaluating the *quality* and *quantity* of the evidence concerning intent introduced at trial, rather than simply determining whether intent was a disputed issue. The majority correctly notes that under *Hamilton*, even "a minimum of dispute" over the issue of intent is sufficient "to trigger the corrupting impact of [a] *Sandstrom* instruction," and to preclude a determination that giving that instruction was harmless. Yet the majority, although it acknowledges that evidence relating to the issue of intent was introduced at Hagler's trial, nonetheless concludes that this evidence was "simply insufficient" to overcome the other evidence in the record suggesting that the

homicide was intentional. In doing so, the majority violates the principles of both *Hamilton* and *Connecticut v. Johnson*, which prohibit courts reviewing *Sandstrom* claims from examining the issue of intent on the merits once they have concluded that it was disputed:

> If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. *The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant.* To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury may never have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made.

*Connecticut v. Johnson*, 103 S.Ct. at 977 & n. 15 (plurality opinion) (citations omitted and emphasis added); *accord In re Hamilton*, 721 F.2d at 1191 (reversal is required if intent is a "disputed issue ... *even if substantial evidence of intent exists* ") (emphasis added). Thus, once the majority acknowledged that evidence was introduced at trial, no matter how weak, suggesting that the homicide in this case may have been less than intentional, it was required, as a matter of law, to conclude that the trial court's *Sandstrom* instruction could not have been harmless beyond a reasonable doubt.

Second, the majority appears to suggest that the fact that Hagler raised an alibi defense at his trial automatically eliminates the issue of intent. However, both the Supreme Court and this court have recognized that an alibi defense and a lack-of-intent defense are not necessarily mutually exclusive. In *Connecticut v. Johnson*, the Supreme Court stated that "[i]n presenting a defense such as alibi, ... a defendant *may in some cases* admit that the act alleged by the prosecution was intentional," thereby making the use of a *Sandstrom* instruction harmless error. 103 S.Ct. at 978 (plurality opinion) (emphasis

added). The Court's statement clearly recognizes that defendants raising alibi defenses do *not* automatically concede the issue of intent.

Similarly, in *McGuinn v. Crist*, 657 F.2d 1107 (9th Cir.1981), upon which the majority relies, this court indicated that a defendant's use of an alibi defense did not automatically prevent him from also raising defenses relating to lack of intent. Although the court ultimately held that the use of a *Sandstrom* instruction at McGuinn's trial was harmless error, it expressly distinguished between defenses relating to alibi and those relating to lack of intent, and reached its conclusion only after specifically determining that the defendant failed to contest the issue of intent. *Id.* at 1108; *see In re Hamilton*, 721 F.2d at 1191 (concluding that intent was not at issue in *McGuinn*). This court clearly indicated in *McGuinn* that the defendant's claim that *he* did not perform the shooting was not incompatible with a claim that whoever performed the shooting was not incompatible with a claim that whoever performed the shooting did not *intend* to kill the victim. At Hagler's trial, in addition to advancing an alibi defense, the defense introduced substantial evidence relating to the issue of intent. The district court was absolutely correct in perceiving that this immediately distinguishes Hagler's case from the situation in *McGuinn*.

Finally, the record belies the majority's conclusion that intent was not a contested issue at Hagler's trial.[2] Alibi was surely the primary defense advanced by Hagler's attorney and was obviously the focus of Hagler's own testimony, but the defense of lack of intent was advanced as well. One must take into account that Hagler's assertion of an alibi defense prevented him from admitting to shooting the victim and then testifying concerning his reasons for doing so and his state of mind. Nonetheless, the record vividly demonstrates that Hagler's attorney presented as effective and extensive a lack-of-intent defense as was possible under the circumstances. Regardless of how this court as a factfinder would resolve the intent issue in Hagler's case, the issue was sufficiently disputed at trial to preclude this court, under the principles of *Hamilton* and *Connecticut v. Johnson*, from holding the trial court's *Sandstrom* instruction to be harmless error.

Through the testimony of various witnesses, Hagler's attorney presented evidence from which a jury might conclude that the killing was unintentional. He elicited testimony that the victim, Leif Ellington, regularly drank to excess, and that he was a threatening and dangerous individual when drunk. He introduced Ellington's autopsy which revealed that Ellington was an alcoholic or at least a chronic drinker, and had Ellington's acquaintances confirm that he drank frequently and often became "soused," as one put it. When questioned by Hagler's attorney, the acquaintances characterized Ellington as "mean," "mood[y]," and "ornery" when he was drunk, and acknowledged that he could become violent and extremely dangerous in those situations. For example, Alex Mankoski, a defense witness who said that he had been a "friend" of Ellington's for twenty years, testified that during one such episode about two weeks before Ellington's death, Ellington had "knocked [his] teeth out and broke[n] his glasses." Furthermore, Mankoski suggested that this was not an unusual or isolated occurrence.

Other acquaintances of Ellington testified that when he was drunk, he believed "that a lot of people were out to get him.... [and] his money." Still others testified that when he was drunk, Ellington would threaten Lida Pickell, the woman with whom he was living. In fact, a local policeman testified that there had been

---

**2.** Unfortunately, the state trial transcript does not contain a record of the parties' closing arguments. Such a record might have clarified exactly what defenses and arguments Hagler's attorney advanced at trial, and might well resolve the question of whether the issue of intent was disputed at Hagler's trial. In the absence of such records, we must extrapolate from the evidence introduced by the defense at trial to determine the theories and arguments it was advancing. *See Conway v. Anderson*, 698 F.2d 282, 285 (6th Cir.1983).

numerous reports to the police of assaults by Ellington on Pickell, and vice versa.

Moreover, Hagler's attorney introduced testimony concerning Ellington's great physical strength, as well as his fascination with and occasional abuse of firearms. A local police officer testified that Ellington once "ripped the door off the jail," and that he had demonstrated great physical strength on several other occasions. The record also reveals that Ellington was over two hundred pounds.

There was also testimony that Ellington had collected a variety of guns, which he kept in his residential trailer, where he was killed. He would occasionally carry one or more of these with him when he went into town, and he was arrested at least once for doing so. An acquaintance of Ellington's testified that on at least one occasion when he was drunk, Ellington fired his guns off inside his trailer, and the police found a number of bulletholes in the trailer.

Hagler's attorney introduced evidence that on the day of the murder, Ellington was drinking heavily. By 10:00 A.M., according to Hagler's testimony, Ellington was beginning on his first pint of whiskey; by about 1:30 P.M., he was beginning on another fifth. By 3:00 or 4:00 P.M., according to Mankoski, Ellington joined him for several glasses of wine. Ellington died sometime during the late afternoon or early evening, and his autopsy revealed a blood-alcohol level of .23 grams percent, indicating that he was "significantly and severely under the influence of alcohol" at the time of death.

The testimony adduced by Hagler's counsel, at a minimum, raises questions as to whether the killing was intentional. When drunk, Ellington could be "mean," often turned on his friends and became violent, and occasionally shot off firearms in his trailer; the evidence suggests that Ellington may himself have precipitated the events leading to his death. Because of Ellington's size, strength, and bullying tendencies, any person with him in his trailer on the afternoon of his shooting could have legitimately feared for his or her safe-

ty. Two loaded weapons other than the murder weapon were found in the trailer after Ellington's death—one, a 32-caliber revolver, was found lying by Ellington's right hand. Moreover, there may have been a struggle: Ellington had an abrasion above his right eyebrow, with some fresh bleeding from it.

The trajectory of the bullet wounding Ellington in the abdomen was also consistent with the possibility that he was not killed intentionally. In response to questions by Hagler's attorney, the pathologist who performed Ellington's autopsy confirmed that Ellington's abdominal wound could have been sustained as he rose from a sitting position and "c[a]me toward" the shooter. Furthermore, the extremely small dimensions of Ellington's trailer (12 feet by 6–12 feet by 6¼ feet) could help to explain why Ellington's wounds were sustained at such point-blank range.

There could have been no other reason for Hagler's attorney to have adduced the evidence relating to Ellington's character, his drinking, his physical strength, his assaults on Mankoski and Pickell, his interest in guns and use of them in his trailer, his prior arrest for carrying a weapon, and the trajectory of the bullet wounding him in the abdomen, other than to raise doubts as to whether his murder was intentional. The Washington Rules of Evidence lend added support to the view that intent was in issue. It is likely that much of the character evidence concerning Ellington would have been inadmissible at trial unless it were introduced to support a claim of lack of intent. *See* Washington Rule of Evidence 404(a)(2) (evidence of character of victim); Fed.R.Evid. 404(a)(2) and Advisory Committee Note on Fed.R.Evid. 404; *see also* Washington Rules of Evidence 401– 402 (relevance). Not one objection to the admission of this evidence was raised by the prosecutor. His silence is eloquent testimony to the fact that intent was in issue.

This court is permitted to examine only *whether* the issue of intent was disputed, not how well it was disputed or whether there was substantial evidence to support a

finding of intent. *Connecticut v. Johnson,* 103 S.Ct. at 977 & n. 15 (plurality opinion); *In re Hamilton,* 721 F.2d at 1191. The harmless-error analysis of *McGuinn,* upon which the majority relies, applies only when intent is *not* disputed by the defendant. *See In re Hamilton,* 721 F.2d at 1191. In this case, in these circumstances, Hagler disputed the issue of intent as best he could without abandoning his alibi defense. I conclude that the trial court's unconstitutional *Sandstrom* instruction was not harmless beyond a reasonable doubt, and I would therefore affirm the district court and grant Hagler's petition for habeas relief.