Francisco Javier GUIZAR, Petitioner,

v.

Wayne ESTELLE, Respondent.

Civ. No. 85–0033–B.

United States District Court,
S.D. California.

Aug. 5, 1986.

Francisco Javier Guizar, CTF Soledad, No. 56102, in pro per, Soledad, Cal., for petitioner.

Robert M. Foster, Deputy Atty. Gen., San Diego, Cal., for respondent.

BREWSTER, District Judge.

The petitioner was tried by a jury and was found guilty as an aider and abettor to first degree murder. He was sentenced twenty-six years to life by the California Superior Court for the County of San Diego.

Petitioner appealed his conviction to the Court of Appeals for the Fourth Appellate District. On appeal, the petitioner alleged that a confession which was admitted at trial was taken in violation of his Sixth Amendment right to counsel, that the trial court failed to instruct the jury on the issue of specific intent in violation of the petitioner's right to due process under the Fourteenth Amendment, and that the sentence imposed was excessive and in violation of the Eighth Amendment prohibition against cruel and unusual punishment. The conviction was affirmed by the Court of Appeals and an unpublished opinion was issued.

A petition for hearing was filed with the California Supreme Court. The petition was denied on the ground that it was filed one day past the filing deadline. Petitioner sought relief from default, and said relief was denied.

Petitioner then filed a petition for a Writ of Habeas Corpus with the California Supreme Court. In that petition, the petitioner alleged that two constitutional errors were committed by the trial court: 1) that the petitioner's confession was admitted into evidence in violation of his rights under the Sixth Amendment, and; 2) the trial court's failure to instruct on the issue of specific intent was per se reversible error. The petition was summarily denied.

Presently before this court is a petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. The petitioner raises the same grounds for overturning the conviction as were raised in the petition filed with the California Supreme Court. This court ruled that the petitioner has exhausted his state court remedies, and thus may reach the merits of the petitioner's constitutional claims.

The evidence presented at trial established that petitioner knew that two individuals, Tapia and Diaz, intended to murder Garcia. Garcia was a competing heroin dealer. Tapia and Diaz planned to kill Garcia so that they could take over his sales territory. The petitioner was asked to drive Tapia and Diaz to the victim's home. The petitioner accompanied Tapia and Diaz to the hardware store where they purchased black paint. Tapia and Diaz used the paint to cover their faces and hands as a disguise. Petitioner then drove them to Garcia's house. The petitioner was given $25.00 by an acquaintance to purchase heroin from the victim. He was instructed to tell the victim that there were dealers selling heroin across the street. Petitioner purchased the heroin and waited in the car for Tapia and Diaz. The victim exited the house and was shot. Petitioner then drove Tapia and Diaz back to his home.

The case against the petitioner was based almost entirely upon a confession he made to police officers sometime after the incident.

## A. SIXTH AMENDMENT CLAIM

■ Shortly after the murder, police officers approached petitioner and requested that he make a statement. At that time, petitioner told the officers that he had not been involved and that he was home at the time the murder took place. Statements were obtained from Tapia and Diaz which implicated the petitioner in the commission of the murder.

The petitioner was taken to the police station and questioned. Prior to questioning, the police officers attempted to admonish the petitioner of his *Miranda* rights. The petitioner stated that he was aware of his rights and that he needed no further warnings. Immediately thereafter, the petitioner confessed that he had driven the getaway car to and from the scene of the murder. This statement, however, was not recorded. The officers told the petitioner that they wished to record his statements and asked him whether he had any objection. The petitioner agreed to have his statements recorded and a stenographer was brought into the interrogation room. Before questioning the petitioner on the record, the officers once again attempted to advise him of his rights. The petitioner interrupted the officers, told them that he knew his rights, and claimed that the officers had informed him of his rights on five prior occasions. When the officers initiated yet another reading, petitioner insisted on reading the *Miranda* warning from a form as opposed to having it read to him. At this point, the petitioner asked the officers why they kept on asking him whether he understood his rights. He stated:

> "Is there something particular I ought to understand? I could have an attorney right now if you guys think I need one. I could stay quiet if I want to and say nothing. Whatever I say, you guys could use that against me. That is okay."

The petitioner then read the waiver form, signed it, and made incriminating statements to the officers.

The petitioner asserts that the statement "I could have an attorney right now if you guys think I need one" demonstrates that his waiver of his *Miranda* rights was not knowing and voluntary since he mistakenly believed that the decision concerning whether counsel should be present was within the discretion of the officers.[1]

1. The petitioner also asserts that because he was not advised of his right to have counsel present during interrogation, the admission of his confession at trial violated his Sixth Amendment right to counsel. This issue was not raised at any point in the state court proceedings, and thus, this court declines to consider this argument when making the determination whether a writ of habeas corpus should issue.

The California Court of Appeals concluded that the petitioner knowingly and voluntarily waived his right to counsel before confessing to the crime and upheld the trial court's admission of the confession at trial. In making this determination, the Court of Appeals reviewed the record. The court noted that the petitioner had at least three opportunities to take the stand and testify that he did not fully understand his right to counsel and that he did not do so, but instead argued that the state had failed to establish beyond a reasonable doubt that he understood his rights. The trial court ruled that whatever ambiguity could be read into the petitioner's statement that he could have an attorney right now "if you think I need one" was resolved when the officers had him read the admonition and sign it. The Court of Appeals found that the actions of the trial court were proper.

28 U.S.C. § 2254(d) provides that a determination after a hearing on the merits of a factual issue made by a state court of competent jurisdiction in a proceeding to which the applicant for the writ and the state were parties which is evidenced by a written opinion shall be presumed correct unless the merits of the dispute were not resolved in the state court proceeding, the fact finding procedure employed was inadequate, the hearing was not a full and fair one, or the material facts were not adequately developed in the state court proceeding. The United States Supreme Court in *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981) found that the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes a finding of fact. Questions of fact that underlie a legal conclusion are also governed by this statutory presumption. *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982). Where there is sufficient evidence to support the findings of a state court as to the voluntariness of a statement, the federal court, on a petition for a writ of habeas corpus, must uphold these findings pursuant to 28 U.S.C. § 2254(d). *Keiper v. Cupp*, 509 F.2d 238, 241 (9th Cir.1975). This court finds that the ruling of the California Court of Appeals is fairly supported by the record and, therefore, upholds its determination that the petitioner's Sixth Amendment rights were not violated by reason of the introduction of the confession at trial.

Alternatively, this court finds, based on a review of the transcripts of the pretrial hearings and the trial, that the totality of the circumstances demonstrates that the petitioner's waiver of his right to counsel was knowing and voluntary, and thus, the admission of the confession by the trial court was proper. *See Edwards v. Arizona*, 451 U.S. 477, 480, 101 S.Ct. 1880, 1882, 68 L.Ed.2d 378 (1981).

## B. INSTRUCTIONAL ERROR

■■■ The petitioner contends that the jury instruction given on aiding and abetting resulted in constitutional error. It is argued that the instruction improperly permitted the jury to substitute the petitioner's knowledge of the perpetrator's intent for the element of the petitioner's own intent and thus resulted in a jury verdict against the petitioner for the same offense as the perpetrators' without having the jury find that the petitioner had the same criminal intent as the perpetrators or that he acted with the specific intent of facilitating and/or encouraging the commission of the murder. The constitutional error urged is that the instruction removed the State's burden of proving each and every element of the offense, in particular, the element of specific intent, beyond a reasonable doubt and, therefore, denied the petitioner of his right to due process under the Fourteenth Amendment.

The trial court instructed the jury in accordance with CALJIGs 3.00 and 3.01 (1979 Revision):[2]

---

2. CALJIC 3.00 and 3.01 (1979 Revision) provide: *CALJIC 3.00* Principals Defined: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include: (1)

The persons concerned in the commission of a crime are regarded by law as principals in the crime thus committed and are equally guilty thereof, and they include: Those who actively and directly commit the act constituting the crime, or those who with knowledge of the unlawful purpose of the persons who directly and actively commit the crime aid and abet in its commission; those who, whether present or not at the commission of the crime, advise and encourage its commission.

One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.

A person aids and abets in the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages, instigates by act or advice the commission of such crime. Mere presence at the scene of the crime does not in and of itself—which does not assist in the commission of the crime does not amount to aiding and abetting. Mere knowledge of the crime as being committed and the failure to prevent does not amount to aiding and abetting.

The petitioner requested that the following instruction be given:

FRANCISCO GUIZAR aided and abetted the commission of the crime if, with knowledge of the unlawful purpose and sharing the intent of LICON [DIAZ] and TAPIA, he aided, promoted, encouraged, or instigated the commission of the crime. Further, to be an aider or abettor to a crime, FRANCISCO GUIZAR must have acted with the specific intent of abetting LICON [DIAZ] and TAPIA.

This request was denied.

Approximately two months after the petitioner's conviction was affirmed by the Court of Appeals, the California Supreme Court decided *People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984). In *Beeman*, the Court declared that CALJIG 3.01 (1979 Revision) inadequately informed the jury of the intent required to convict a defendant as an aider and abettor of a crime. *Id.* at 551, 199 Cal.Rptr. 60, 674 P.2d 1318. The Court found that California case law and the weight of authority require that in order to convict a defendant on the theory of aiding and abetting, there must be proof that the defendant acted with knowledge of the perpetrator's intent and with the intent or purpose either of committing, or encouraging, or facilitating the commission of the offense. *Id.* at 560, 199 Cal.Rptr. 60, 674 P.2d 1318. CALJIG 3.01 was found to be based on a misinterpretation of California law because its definition of aiding and abetting failed to insure that the aider and abettor will be found to have the required mental state with regard to his own acts. *Id.* The Court acknowledged that while an act which has the effect of giving aid and encouragement, and which is done with knowledge of the perpetrator's intent, may support the inference that the actor intended to assist in the commission of the offense, the act may be done with some other purpose not subject to criminal sanctions, and thus the inference is not conclusive,

---

Those who directly or actively commit or attempt to commit the act constituting the crime, or (2) Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit the crime or attempt to commit the crime, aid and abet in its commission or attempted commission, or (3) Those who, whether present or not at the commission or attempted commission of the crime advise or encourage its commission or attempted commission." [One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]

*CALJIC 3.01* Aiding and Abetting defined: "A person who aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." [Mere presence at the scene of a crime and failure to take steps to prevent a crime do not in themselves establish aiding and abetting.]

and the defendant is entitled to an opportunity to dispel such an inference. *Id.* at 558–59, 199 Cal.Rptr. 60, 674 P.2d 1318.[3]

Beeman argued that the instruction required reversal of the conviction under both California law and the United States Constitution. The federal constitutional error alleged was that the erroneous instruction created a presumption of intent, and that such a presumption violates due process and mandates automatic reversal of the conviction under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The California Supreme Court, without expressly relying on federal constitutional authority, reversed the conviction on the ground that a review of the evidence disclosed that it was reasonably probable that the jury would have reached a result more favorable to the defendant had it been properly instructed on the intent element of aiding and abetting. *Id.*, 35 Cal.3d at 563, 199 Cal.Rptr. 60, 674 P.2d 318. (citing *People v. Watson*, 46 Cal.2d 818, 299 P.2d 243 (1956)). The question of whether *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) requires reversal of the conviction, however, was discussed in a footnote. The Court stated:

> In *Connecticut v. Johnson*, (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969] the United States Supreme Court split

four to four on the question of whether *Sandstrom* error requires reversal per se or may be reviewed for prejudice under the standard applicable errors of federal constitutional dimension (*Chapman v. California*, (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] ). While the error which flows from the giving of CALJIC No. 3.01 is not identical to a conclusive presumption or to placing the burden of persuasion on the defendant (cf. *Connecticut v. Johnson, supra*, 460 U.S. at pp. 78–79 [74 L.Ed.2d at pp. 828–829, 103 S.Ct. at p. 973] ), it is just as effective—if not more effective—in removing the issue of intent from the jury's consideration. (Cf. *Connecticut v. Johnson, supra*, 460 U.S. at pp. 95–96 [74 L.Ed.2d at p. 839, 103 S.Ct. at p. 982, dissenting opinion of Justice Powell.)

*Beeman*, 35 Cal. at 561, n. 4, 199 Cal.Rptr. 60, 674 P.2d 1318.

The petitioner relies on *Beeman* in making the argument that the instruction given at trial was improper and that this error requires reversal of his conviction. This court is precluded from re-examining whether the instruction is proper under California law since questions of state substantive law are precluded from consideration in a federal habeas corpus proceeding.

---

**3.** Following *Beeman*, CALJIG 3.00 and 3.01 were revised. These instructions now provide: *CALJIC 3.00* (1984 Revision) Principals—Defined:

"The persons concerned in the [commission] [or] [attempted commission] of a crime who are regarded by law as principals in the crime thus [committed] [or] [attempted] and equally guilty thereof include:
 1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or
 2. Those who aid and abet the [commission] [or] [attempted commission] of the crime.
 [One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged.]
*CALJIC 3.01* (1984 Revision) Aiding and Abetting—Defined:

A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she,
 (1) with knowledge of the unlawful purpose of the perpetrator and
 (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense,
by act or advice aids, promotes, encourages, or instigates the commission of the crime.
 [A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be personally present at the scene of the crime.]
 [Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]
 [Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]"

*Wainwright v. Sykes,* 433 U.S. 72, 81–82, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1976). The question before this court is whether the defect in the instruction outlined by the California Supreme Court is an error of a constitutional dimension, i.e., does this instruction violate the principles enumerated in *Sandstrom.*

In *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), the United States Supreme Court held that due process requires the prosecution to prove each and every element of an offense beyond a reasonable doubt. In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Court looked at whether, in a case where intent is an element of the crime charged, the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts", violates the requirements of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Court held that a jury instruction that creates a mandatory presumption which relieves the State of its burden of persuasion on each essential element of a crime constitutes a due process violation. *Id.,* 442 U.S. at 521, 99 S.Ct. at 2458.

The Court's holding in *Sandstrom* was clarified in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The Court found that the threshold inquiry in the analysis of whether *Sandstrom* error is present is the nature of the presumption created by the instruction. *Id.,* 105 S.Ct. at 1971. In assessing the instruction which is alleged to constitute *Sandstrom* error, the courts are to determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. *Id.* Mandatory presumptions violate due process if they relieve the State of the burden of persuasion of an element of an offense; a permissive inference, however, does not relieve the State of its burden of persuasion because the State is still required to convince the jury that the suggested conclusion should be drawn from the predicate acts proven. *Id.* Permissive inferences impli-

cate due process concerns "only if the suggested conclusion is not one that reason and common sense justify in light of the facts before the jury". *Id.*

The Court cautioned that while the initial focus must be on the specific language challenged, that portion of the charge must not be read in isolation; rather, the language must be looked at in the context of the instruction as a whole. *Id.* The crux of the analysis is what would a reasonable juror understand the instruction to mean. *Id.*

Under *Beeman,* CALJIG 3.01 creates a mandatory presumption. The jury is not told in CALJIG 3.01 that in order to find the defendant guilty as an aider and abettor, it must not only find that the defendant knew of the perpetrator's intent and took actions which facilitated and/or encouraged the commission of the offense, but it must also find that the defendant had the intent or purpose to encourage and/or facilitate the commission of the offense. In effect, there is a mandatory presumption in the instruction that such intent exists. A review of the instructions given at the petitioner's trial discloses that the intent element of the aiding and abetting was not brought to the attention of the jury, and, therefore, the instruction created a mandatory presumption. This defect had the effect of removing the burden on the State to prove intent and thus deprived the petitioner of his rights under the Fourteenth Amendment.

The next issue which this court must address is whether presence of *Sandstrom* error requires that a Writ of Habeas Corpus issue. Petitioner urges that the error in the instruction requires automatic reversal of the conviction. In making this contention, petitioner relies upon *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), a United States Supreme Court plurality decision which provides that *Sandstrom* error in most instances will require reversal of a conviction under *Chapman v. California,* 386 U.S.

18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[4] The Ninth Circuit has interpreted this case to require reversal of a conviction if there is *Sandstrom* error present and a criminal defendant's intent is a disputed issue at trial. *In re Hamilton*, 721 F.2d 1189, 1191 (9th Cir.1983). *See also, Hagler v. Callahan*, 764 F.2d 711 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3334, 92 L.Ed.2d 739 (1986); *Herd v. Kincheloe*, 792 F.2d 1441 (9th Cir.1986).

Petitioner's contention that his conviction is subject to automatic reversal is unfounded in light of a recent United States Supreme Court decision. In *Rose v. Clark*, —— U.S. —— 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Court resolved the question of whether the presence of *Sandstrom* error requires automatic reversal of a conviction. The holding of this case is that if a defendant is given a full opportunity to put on his evidence, and make arguments in support of his innocence, and he is tried by an impartial, fairly selected jury, supervised by an impartial judge and was represented by counsel, burden-shifting jury instructions should be analyzed under the harmless error standard. *Id.*, 106 S.Ct. at 3106–08. The Court reasoned that if *Sandstrom* error is present and "where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness is satisfied and the judgment should be affirmed". *Id.*

A review of the record in the case before the court shows that the petitioner was given a full opportunity to put on evidence and to assert his innocence. There are no claims by the petitioner that there were defects in the jury selection process, that there was any jury tampering, or that the Superior Court judge was biased. Therefore, this court must review the record to determine whether the instructional error was harmless.

Under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), a reviewing court should not set aside an otherwise valid conviction if the court can confidently say, on the whole record, that the constitutional error in question was harmless beyond a reasonable doubt. It is the opinion of this court that the evidence presented below establishes beyond a reasonable doubt that the petitioner acted with the intent to facilitate and encourage the murder of Garcia, and thus, the error in the instruction is harmless.

Guizar's confession disclosed that he was aware of the plan to kill Garcia several days before the murder took place. He confessed that Tapia and Diaz had asked him the day before the incident to drive them to the intended victim's home. Petitioner drove Tapia and Diaz to the store to purchase the black paint which they used to disguise themselves. He stated that he knew that the perpetrators were going to shoot the victim, but that he was unsure whether they intended to kill Garcia or merely to injure him. He also confessed that he had driven the car to the vicinity of the victim's home, that Tapia and Diaz had disguised themselves with the black paint and that they were armed, and that he went to the victim's home to purchase heroin and that he told the victim that there were competing dealers across the street, knowing the victim would approach the place where Tapia and Diaz were lying in wait for him armed.

On the stand, the petitioner denied driving the perpetrators to the victim's home, and stated that at the time of the murder, he was under the influence of heroin and that he accompanied Tapia and Diaz because he wanted to purchase heroin from

---

**4.** In *Connecticut v. Johnson*, 460 U.S. 73, 87, 103 S.Ct. 969, 977–78, 74 L.Ed.2d 823, the Court set forth three instances where *Sandstrom* error will not have an impact on the verdict: 1) where the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no impact on the offense for which he was convict- ed; 2) if the defendant conceded the issue of intent; or 3) where the defendant was offering evidence on defenses such as alibi, insanity, or self-defense. This court finds that none of these exceptions are applicable since the thrust of the petitioner's defense was that he did not intend to aid and abet the murder of Garcia.

the competing dealers, but he was forced to purchase from Garcia because he did not have enough money to buy heroin from the other dealers.

The petitioner also testified that he made up those portions of his confession which were incriminating because one of the officers who interrogated him promised leniency if he came forward with a statement that was "believable". On cross-examination, the petitioner admitted to driving the car.

In the opinion of this Court, these facts establish beyond a reasonable doubt that the petitioner had the requisite intent to be convicted for aiding and abetting first degree murder.

For reasons stated above, petitioner's request for the issuance of a Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.