1 F.3d 1247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Earnest Lee RUFF, Petitioner-Appellant,
v.
Larry KINCHELOE, Respondent-Appellee.
 No. 91-36010.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 1, 1993.
Decided Aug. 3, 1993.
 
 Before WRIGHT, CANBY and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Earnest Ruff brought a habeas petition in federal court to challenge his state convictions on one count of first-degree arson and two counts of felony murder. Ruff argued that a presumed intent instruction, which state officials admit is unconstitutional, tainted the jury's verdict. The district court denied Ruff's petition without a hearing on the ground that the error was harmless. We reversed and remanded for a review of the entire state court record. Ruff v. Kincheloe, 843 F.2d 1240, 1243 (9th Cir.1988) (Ruff I ). After completing that review, the district court again denied the petition on the basis of harmless error. We affirm.
 
 
 3
 * In 1974 Earnest Ruff shared an apartment with his brother Verlee in Pasco, Washington. The two brothers were close, but often argued. One evening, after one such argument at a tavern, someone set fire to the house of Verlee's girlfriend. Two children living in the house died from smoke inhalation. Someone also burned Verlee's car, which was parked in front of the house. One of Earnest's friends, Jeffrey Wilson, made statements to police that implicated Earnest Ruff. Earnest was arrested and charged with one count of first-degree arson and two counts of first degree murder. His trial took place in 1975.
 
 
 4
 The prosecution's case against Earnest relied largely upon Wilson's testimony. Wilson told the jury that he and Earnest went to the Ruff apartment and retrieved Earnest's car after leaving the tavern. Earnest feared, Wilson said, that Verlee might try to vandalize the car. Wilson testified that the two drove to a service station where Earnest filled a gas can and asked Wilson to get a book of matches.
 
 
 5
 Wilson stated that Earnest said he was going to "burn [Verlee's] house down." The two drove to the home of Verlee's girlfriend, where Verlee resided, and parked behind it. Wilson said that he sat in the car and watched as Earnest poured gas on the rear of the house and set it afire. Earnest went to the front of the house too, but Wilson said that he was unable to see what Earnest was doing there. Eventually Earnest returned and the two drove away. Wilson testified that Earnest threw the empty gas can into a vacant lot a few blocks away.
 
 
 6
 Ruff relied on an alibi. He stated that he had wanted to move his car but that it was out of gas that night. Wilson went with him, Earnest testified, to buy gas. A baby-sitter in the Ruff apartment said that she watched Earnest pour gas into the car. "It looked like it was the last gallon of gasoline in the world," she recalled, "because he just stood there trying to get every drop out."
 
 
 7
 Earnest testified that he and Wilson then drove the car to Wilson's house. Shortly thereafter, said Earnest, Wilson's brother and some other men came into the house. The brother said that neighbors of Verlee Ruff's girlfriend had assaulted him after a fire broke out at the girlfriend's home. Fearful for their own safety, according to Earnest, the group went to a local police station. There, said Earnest, Jeffrey Wilson implicated Earnest as the arsonist.
 
 
 8
 The trial court instructed the jury on the elements of first degree arson and first degree murder. Although intent to kill is not an element of felony murder, intent to start a fire is an element of first degree arson. The court gave the jury a presumed intent instruction.[1] Four years after Ruff's trial the United States Supreme Court held unconstitutional a similar presumed intent instruction in Sandstrom v. Montana, 442 U.S. 510, 513 (1979).
 
 
 9
 The jury convicted Ruff on all counts. The trial court sentenced Ruff to twenty years to life in prison. The Washington state courts rejected Ruff's direct and collateral attacks on his convictions. Ruff maintains that Sandstrom error taints his convictions. Although the state concedes that Sandstrom error occurred, see Ruff I, 843 F.2d at 1241, it maintains that the error was harmless.
 
 II
 
 10
 Sandstrom instructions are subject to harmless error analysis. See Yates v. Evatt, 111 S.Ct. 1884, 1892 (1991) (citing Rose v. Clark, 478 U.S. 570, 582 (1986)). Because Ruff is attacking his state conviction collaterally, we apply the harmless error standard recently set forth by the Supreme Court in Brecht v. Abrahamson, 113 S.Ct. 1710 (1993). We may therefore reverse only if the unconstitutional instruction " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Id. at 1718 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). We review de novo the district court's denial of Ruff's petition on the ground that the erroneous instruction was harmless. Hart v. Stagner, 935 F.2d 1007, 1012 (9th Cir.1991).
 
 
 11
 A finding of intent is necessary to support the verdict for first degree arson, and in turn, felony murder. Therefore, we must identify the evidence that the jury considered which tends to prove or to disprove intent. See Yates, 111 S.Ct. at 1893 & n. 9. To determine what evidence the jury was authorized to consider, we analyze the instructions and adhere to our own presumption that jurors follow those instructions. Id. at 1893. Once we have identified the relevant evidence, we "weigh the probative force of that evidence as against the probative force of the presumption standing alone." Id.
 
 
 12
 * The district court correctly found that the predicate facts support the conclusion that the presumed intent instruction was harmless. "No rational jury could conclude," said the court, "that Ruff committed the acts and at the same time conclude he did so without intent or with excuse or justification." Ruff concedes that if the jury rejected his alibi and believed Wilson's testimony, the jury necessarily found, without relying on the presumption, that he had intended to start the house fire.[2]
 
 
 13
 Ruff contends, however, that the jurors received inconsistent instructions on the elements of first-degree arson that would have permitted them to convict him of felony murder for having set the car on fire. Washington defines first-degree arson, in relevant part, either as the burning of a dwelling or the setting of a fire manifestly dangerous to human life. Wash.Rev.Code Ann. Sec. 9A.48.020 (West 1988) (identical in relevant part to former Wash.Rev.Code Sec. 9.09.010). The instruction given jurors on the arson count included only the first definition. In contrast, the felony murder instructions referred jurors to another instruction that set out both definitions of arson. Ruff argues that had the jury rejected his testimony and that of Wilson, it could have determined that Ruff set fire only to Verlee's car. The jury then would have been forced to rely upon the presumed intent instruction, Ruff concludes, to have convicted him of the murder of the two children in the house.
 
 
 14
 Ruff's argument is meritless. The felony murder instructions permitted the jury to convict Ruff on those charges only if it found that he caused the deaths of the two children. Ruff could not have been a cause of their deaths if he was not responsible for the house fire. Ruff's argument is untenable because it disregards the presumption that jurors follow all of the instructions given to them. Yates, 111 S.Ct. at 1893.
 
 B
 
 15
 We also conclude that the Sandstrom instruction could not have had a substantial and injurious effect or influence on the jury's verdict if the jury convicted on an aiding and abetting theory. The trial court had instructed the jury that it might convict Ruff either as a principal or as an aider and abettor on the arson and felony murder counts. The question was raised in final arguments whether Wilson had been as passive a spectator as he had testified, and there was evidence from a neighbor that more than one person got out of a car by the victims' house. On direct appeal the state court of appeals rejected Ruff's contention that the trial court erred in giving an aiding and abetting instruction. The court said:
 
 
 16
 Because the jury could disbelieve Wilson's testimony of his passive presence during the arson, there is substantial evidence of Mr. Ruff's participation in the crime as an aider and abettor, as well as a principal. Instruction and argument to the jury upon both theories was therefore proper.
 
 
 17
 State v. Ruff, No. 1597-III, slip. op. at 3-4 (Wash.App. Apr. 11, 1977). Under Washington law, the elements of an offense are the same either for principal or accomplice liability. State v. Bockman, 682 P.2d 925, 938 (Wash.App.1984); see also State v. Thompson, 806 P.2d 1251, 1253 (Wash.App.1991) (aiding and abetting conviction may stand "even though [the defendant] was the only person charged in the information").
 
 
 18
 To convict Ruff on an aiding and abetting theory, the jury would have had to find that he intentionally aided and abetted in setting the house on fire. State v. Nelson, 561 P.2d 1093, 1096 (Wash.App.1977) (interpreting former Wash.Rev.Code Sec. 9.09.010).[3] Moreover, to avail itself of the presumption of intent under the trial court's instruction, the jury first would have had to find that the fire was the natural and probable consequence of Ruff's acts. On the facts of this case, causation of the fire was necessarily attended with the requisite criminal intent. This is not a case like Sandstrom, where an act (a shooting) has been committed and there is an issue whether it was intentional or accidental. Splashing gasoline on a house and striking a match to it, or helping to commit those acts, cannot in any rational juror's view, lead to an accidental fire.
 
 
 19
 Ruff's evidence was an alibi. Wilson's evidence was that Ruff splashed the gasoline on the house and lit a match to it. By far the most likely scenario is that the jury believed Wilson and not Ruff. Even if the jury disbelieved all of Ruff's alibi and yet rejected some of Wilson's testimony, there is no evidence at all that the acts that took place at the back of the victims' house were unaccompanied by an intent to burn it. When an element of intent is not in issue, and the evidence is such that no reasonable juror could conclude that whoever committed the crime did so unintentionally, Sandstrom error is harmless. Hagler v. Callahan, 764 F.2d 711, 716 (9th Cir.1985), cert. denied, 478 U.S. 1020 (1986), disapproved on other grounds by McKenzie v. Risley, 842 F.2d 1525, 1532 n. 10 (9th Cir.) (en banc), cert. denied, 488 U.S. 901 (1988).
 
 
 20
 No objective basis exists upon which to believe that jurors relied upon the presumed intent instruction to convict Ruff of arson and felony murder. The Sandstrom error could not have "had substantial and injurious effect or influence in determining the jury's verdict." The judgment is
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Instruction 9 provided:
 The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.
 "Intent" is a mental condition or process and may be shown by direct proof or may be derived from and established by the attendant facts and circumstances as shown by the evidence. In determining the question of the intent of the defendant at the time of the killing herein alleged, if you find from the evidence that the defendant committed such killing, you may take into consideration the nature and character of the weapon or instrument used, if any; the manner in which such weapon or instrument was used, if at all; the acts and conduct of the defendant, together with all the other facts and circumstances shown by the evidence, and from all these, determine the intent of the defendant in this case.
 
 
 [2]
 A finding that Ruff poured gasoline on the back of the house and struck a match is so closely related to an ultimate finding of intent to commit arson that the two are "functionally equivalent." Carella v. California, 491 U.S. 263, 271 (1989) (Scalia, J., concurring)
 
 
 [3]
 Under the former statute, arson was a general intent crime. See id. at 1097. The state bore the burden of showing only that Ruff deliberately helped set a fire to some building. Id. at 1096